Argued and submitted January 25, conviction for interference with making a report reversed and remanded with instructions to enter a conviction for attempted interference with making a report and for resentencing; otherwise affirmed October 16, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KURTIS CARL SMITH,
aka Kurtis C. Smith,
*Defendant-Appellant.*

Multnomah County Circuit Court
100949886; A147759

312 P3d 552

Elizabeth G. Daily, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Jeremy C. Rice, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals his conviction for interference with making a report, ORS 165.572. Under that statute, as relevant here, "[a] person commits the crime of interference with making a report if the person, by removing, damaging or interfering with a * * * telephone * * *, intentionally prevents or hinders another person from making a report to a * * * 9-1-1 emergency reporting system." Defendant assigns error to the trial court's denial of his motion for a judgment of acquittal, arguing that the state failed to introduce evidence that defendant's actions hindered the victim's 9-1-1 report. We reverse defendant's conviction for interference with making a report and remand with instructions to enter a judgment of conviction for attempted interference with making a report. Otherwise, we affirm.

In reviewing the denial of a motion for a judgment of acquittal, we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the state to determine whether a rational trier of fact could find that the state proved each element of the offense beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998); *State v. Lawrence*, 231 Or App 1, 3, 217 P3d 1084 (2009), *rev den*, 347 Or 533 (2010). Consistent with that standard, the facts are as follows.

Defendant and his fiancée had been fighting at their apartment. Defendant's fiancée called her friend, Russell, to help resolve the dispute. Russell arrived at the apartment and helped defendant move his belongings to his parents' house. Afterward, defendant told Russell that he had friends he could stay with but that they were at a bar near the apartment. Russell agreed to drop defendant off at the bar so long as defendant promised not to return to the apartment.

Defendant agreed, and, after dropping him off at the bar, Russell returned to the apartment. Upon arriving at the apartment, Russell plugged her cellular phone, which had died, into a wall charger. Russell and defendant's fiancée had talked for about 10 minutes when Russell realized that she had left her purse in her truck. Russell left the apartment to retrieve her purse and encountered defendant

outside the apartment. Russell screamed at defendant, "I told you I would call the cops if you came back." Defendant and Russell scuffled outside the apartment door, with both of them eventually entering the apartment.

Once inside, Russell went for her cellular phone, and defendant went to talk to his fiancée. Russell picked up her phone, which was still plugged into the wall charger, dialed 9-1-1, and told defendant "I'm calling 9-1-1 on you." Defendant then approached Russell and, without touching her cellular phone, grabbed the charger cord and yanked on it. The charger cord disconnected from the phone, but defendant did not pull the phone out of Russell's hand. Russell continued with her call to 9-1-1 despite defendant's pulling on the charger cord, retaining her connection to 9-1-1 without redialing. Defendant then put the phone charger in his pocket, and as he left, he told Russell, "Good luck calling the cops now, bitch."

Defendant was charged with harassment, ORS 166.065, interference with making a report, ORS 165.572, and theft in the third degree, ORS 164.043. At the close of evidence at trial, defendant moved for a judgment of acquittal on the interference charge on the ground that there was no evidence that defendant had intentionally prevented or hindered Russell from making her 9-1-1 call. Defense counsel argued:

> "Best case scenario for the State is still, [defendant] yanks a phone cord, doesn't get a phone out from [Russell's] hand, doesn't interfere with her making that call in any manner whatsoever."

The court denied defendant's motion. The jury acquitted defendant on the harassment charge but found him guilty on the interference and theft charges.

On appeal, defendant challenges only his conviction for interference with making a report and argues that ORS 165.572 requires the state to prove that defendant's conduct caused a specific result, namely that it "prevent[ed] or hinder[ed] another person from making a report." Applying the analytical framework in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), defendant further argues that the plain

meaning of "prevents or hinders" requires that a defendant's actions, at minimum, have some detrimental effect on another person's ability to make a report. The state agrees with defendant's construction of the statute, and so do we. The parties disagree, however, over whether the state introduced evidence establishing that detrimental effect. Because we agree with defendant that it did not, we reverse defendant's conviction.

We initially address what the state was required to prove. Beginning as we always do with the text, ORS 165.572(1) provides:

> "A person commits the crime of interference with making a report if the person, by removing, damaging or interfering with a telephone line, telephone or similar communication equipment, intentionally prevents or hinders another person from making a report to a law enforcement agency, a law enforcement official, an agency charged with the duty of taking public safety reports or a 9-1-1 emergency reporting system."

As an initial matter, ORS 165.572(1) plainly requires the state to prove that a defendant engaged in specific conduct and that the defendant intentionally caused a specific result. The structure of the statute provides that the state must prove three elements: First, the state must prove that the defendant took an action, specifically that he "remov[ed], damag[ed] or interfer[ed] with a *** telephone." Second, the state must establish that the defendant's act of removing, damaging, or interfering with a telephone had the *effect* of "prevent[ing] or hinder[ing] another person from making a report to *** 9-1-1." Third, the state must show that the defendant did so intentionally. Thus, the act of interfering with a telephone is separate and distinct from its effect, namely the prevention or hindrance of another person from making a report.

We now focus on what the legislature intended by the phrase "prevents or hinders another person from making a report." The legislature did not define the terms "prevents" and "hinders." When no statutory definition exists, we presume that the legislature intended the terms to have their plain, natural, and ordinary meaning. *PGE v.*

*Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). The plain meaning of the verb "prevent" suggests stopping something from occurring altogether. *State v. Hansen*, 253 Or App 407, 412, 290 P3d 847 (2012). Common definitions of "prevent" are "to deprive of power or hope of acting, operating, or succeeding in a purpose: FRUSTRATE, CIRCUMVENT," and "to keep from happening or existing esp. by precautionary measures: hinder the progress, appearance, or fulfillment of: make impossible through advance provisions," as well as "to hold or keep back (one about to act): HINDER, STOP." *Webster's Third New Int'l Dictionary* 1798 (unabridged ed 2002).

Common definitions of "hinder" include "to make slow or difficult the course or progress of: RETARD, HAMPER," and "to keep from occurring, starting, or continuing: hold back: PREVENT, CHECK," *id.* at 1070. Although "prevent" and "hinder" are synonymous under those definitions, the legislature's decision to use both terms suggests that it intended the statute to cover two different effects—stopping a report completely *and* hampering a report. *See Hansen*, 253 Or App at 413 (discussing the significance of legislature's use of both "obstruct" and "prevent" in ORS 162.325). Therefore, the text indicates that culpability under ORS 165.572 is predicated on the defendant either (1) keeping another person from making a report altogether or (2) making it slow or difficult for another person to make a report—both of which require some actual detrimental effect on the making of a report.

The legislative history confirms that construction. When it was introduced in 1999, House Bill (HB) 3591 provided that culpability would attach if the person "prevents or hinders *or attempts to prevent or hinder* another person from making a report." (Emphasis added.) However, a later amendment removed the "attempts to prevent or hinder" language from the bill. HB 3591 § 1 (A-Engrossed). During a House Judiciary Committee work session, Committee Counsel John Horton explained the reason behind the amendment:

"[A]ttempting to prevent or hinder is removed because that would mean, if you left that language in, that even though

> this is a misdemeanor you couldn't have a lesser included offense, which is sort of contrary to what the criminal structure in Oregon for most misdemeanors allows for."

Tape Recording, House Committee on Judiciary-Criminal Law, HB 3591, Apr 28, 1999, Tape 165, Side B (statement of Committee Counsel John Horton). Through that amendment, the legislature intended to punish only acts that had the effect of preventing or hindering another person from making a report, not merely attempts to do so. *Id.* Therefore, we conclude that, to prove that a defendant "hindered" a report under ORS 165.572, the state must establish that the defendant's actions made it slow or difficult for another person to make a report. That requires proof of some discernible interruption or delay in the making of a report; evidence that there was a *de minimis* effect is not sufficient.

We now apply that requirement to this case. Defendant argues that his actions did not have a detrimental effect on Russell's 9-1-1 report. The state disagrees, arguing that the evidence showed that defendant's actions did hinder Russell's report to 9-1-1 by making her call occur more slowly and adding difficulty to the process.

Russell's trial testimony was the only evidence presented that related to the interference charge. However, Russell's testimony about the events provides no evidence that defendant's act of pulling on the charger cord made it slow or difficult for Russell to make her call and to give her report to 9-1-1. For example, Russell explained at trial that her phone charger was the type that "just plugs directly in, which can just pull directly back out" rather than the kind that "pinches and plugs into your phone." Furthermore, she testified that she had dialed 9-1-1 before defendant grabbed the charger cord. Thus, when defendant pulled on the charger cord, "he only [got] the charger. He [did] not end up with the phone because the phone separate[d] from the charger," the phone stayed in Russell's hand, and Russell was able to continue her call with the 9-1-1 dispatcher. Additionally, Russell testified that defendant left the apartment after disconnecting the charger and made no further attempt to interfere with her phone. During the encounter, Russell did not have to redial 9-1-1 or use another phone to make the

report. In sum, defendant's act of pulling on the charger cord did not have any detrimental effect on her making her report to 9-1-1.

At oral argument, the state argued that at least an inference could be drawn that a person pulling on a charger cord could make a call more difficult. The problem with that theory, however, is that no such inference can be drawn in this case. Russell's trial testimony eliminates that possibility. Because she had already dialed 9-1-1 when defendant grabbed the charger, the phone stayed in her hand, she did not have to redial her call to 9-1-1, and she continued to make her report while defendant left the apartment, a reasonable jury could not have inferred that the mere pulling of the charger cord made it slow or difficult for Russell to make a report.

Thus, we conclude that, based on the evidence at trial, a rational jury could not have found that defendant hindered Russell from making a report. Accordingly, the trial court erred in denying defendant's motion for a judgment of acquittal on the interference charge. The state contends—and defendant concedes—that the state proved attempted interference. We therefore reverse defendant's conviction for interference with making a report and remand to the trial court for entry of a judgment of conviction for attempted interference with making a report; otherwise, we affirm.

Conviction for interference with making a report reversed and remanded with instructions to enter a conviction for attempted interference with making a report and for resentencing; otherwise affirmed.