Submitted May 29, 2013, affirmed April 2, petition for review allowed August 7, 2014 (355 Or 879)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EMILIO JUNIOR MEDINA,
*Defendant-Appellant.*

Yamhill County Circuit Court
CR100685; A147883

324 P3d 526

Peter Gartlan, Chief Defender, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jeremy C. Rice, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Tookey, Judge, and Rasmussen, Judge pro tempore.

TOOKEY, J.

## TOOKEY, J.

Defendant appeals a judgment of conviction for identity theft under ORS 165.800,[1] which arose out of an incident in which defendant identified himself as another person to a police officer during a traffic stop, signed the name of that other person on documents at the police department, and then submitted those documents to the police.[2] He contends that the trial court erred when it denied his motion for judgment of acquittal. We conclude that the trial court did not err and affirm.

When reviewing the denial of a motion for judgment of acquittal, we "view the evidence in the light most favorable to the state to determine whether a rational trier

---

[1] At the time of defendant's conduct that led to defendant's conviction for identity theft, ORS 165.800 provided, in part:

"(1) A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person.

"*****

"(4) As used in this section:

"(a) 'Another person' means a real person, whether living or deceased, or an imaginary person.

"(b) 'Personal identification' includes, but is not limited to, any written document or electronic data that does, or purports to, provide information concerning:

"(A) A person's name, address or telephone number;

"*****

"(C) A person's Social Security number or tax identification number;

"*****

"(I) A person's signature or a copy of a person's signature;

"*****

"(L) A person's date of birth[.]"

ORS 165.800 was amended during the 2013 regular session of the Legislative Assembly. *See* Or Laws 2013, ch 158, § 34. That amendment, which expanded the definition of "'[a]nother person'" to include "a firm, association, organization, partnership, business trust, company, corporation, limited liability company, professional corporation or other private or public entity[,]" does not apply to this case. All subsequent references to ORS 165.800 are to the version in effect when defendant committed his crime.

[2] Defendant was also convicted of giving false information to a peace officer for issuance or service of a citation (Count 2), ORS 162.385, giving false information to a police officer (Count 3), ORS 807.620, and failure to carry or present a license (Count 4), ORS 807.570, but he does not challenge those convictions on appeal.

of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998).

Defendant stipulated to the following facts. After a police officer stopped defendant for traffic violations, defendant claimed that he had no driver's license; defendant misidentified himself as "Sergio Molina" and gave the officer a birth date purportedly belonging to that person. The officer ran the provided information through dispatch, but dispatch was unable to locate "Sergio Molina." The officer arrested defendant for failure to carry and present a license and transported defendant to the police department.

During the booking process, someone prepared a property record and a fingerprint card for "Sergio Molina."[3] The documents bear that name as well as a birth date. The fingerprint card also bears defendant's fingerprints and a social security number. Defendant signed the name "Sergio Molina" on the two written documents.

Defendant was cited and released, and defendant's fingerprints were faxed to the Automated Fingerprint Identification System (AFIS)—a system that obtains, stores, and analyzes fingerprint data. An AFIS employee called the officer and reported defendant's true identity. When the officer later spoke to defendant in jail, where defendant was lodged on a different matter, defendant told the officer that he did not know anyone named "Sergio Molina." Defendant also told the officer that he had lied about his identity because there was a warrant out for his arrest.

The state charged defendant with identity theft under ORS 165.800, alleging that defendant, with the intent to deceive, did "utter or convert to defendant's own use personal identification of 'Sergio Molina.'" The case proceeded to a bench trial, and defendant moved for judgment of acquittal. At trial, defendant argued that ORS 165.800 did not apply to his conduct because, when he signed the property record and fingerprint card at the police department, he was merely continuing the crime of giving false information to a police officer. To support that argument, defendant

---

[3] The record does not indicate who prepared the documents.

cited *State v. Fields*, 191 Or App 127, 128, 79 P3d 915 (2003), in which this court held in a per curiam opinion that the defendant did not commit the crime of identity theft when he "identified himself as his friend" to a police officer and "gave the officer his friend's personal identifying information."[4] The state argued, on the other hand, that defendant committed identity theft when he signed the name "Sergio Molina" on the property record and fingerprint card with the intent to deceive the police and to avoid arrest on an outstanding warrant. The trial court denied defendant's motion for judgment of acquittal, and defendant was convicted as noted above.

On appeal, defendant argues that his conduct did not constitute identity theft under ORS 165.800. Although defendant concedes that he may have converted to his own use the signature of another person when he signed the property record and fingerprint card, defendant argues that such conduct did not violate ORS 165.800 because he did not convert to his own use a written document. Defendant also contends that he did not utter the personal identification of another person, but that he merely "*caused*" the police officer to utter such personal identification. Citing *Fields*, defendant further asserts that the legislature did not intend to punish someone who signs the name of another person to a document under circumstances such as those in this case.[5]

The state responds that defendant, with the intent to deceive, converted to his own use, and uttered, the personal identification of "Sergio Molina" when he signed the property record and fingerprint card, thereby violating ORS 165.800. The state also contends that *Fields* is not dispositive because it relies entirely on legislative history from the 1999 regular session of the Legislative Assembly. The state notes that, in 2001, the legislature broadened the scope of the identity theft statute to criminalize conduct undertaken

---

[4] The briefs filed in *Fields* indicate that the defendant's representations to the police officer were oral representations.

[5] Defendant also asserts that the trial court "focused on the term 'creates' as used in ORS 165.800" and that, to the extent that the trial court did so, it erred, as that conduct was not charged in the indictment. Because a rational trier of fact, making reasonable inferences, could have found the essential elements of ORS 165.800 proved beyond a reasonable doubt based on the allegations as charged in the indictment, we decline to consider that issue.

"with the intent to deceive[.]" Or Laws 2001, ch 870, § 3. In the state's view, that change demonstrates legislative intent to punish the conduct at issue in this case.

Whether ORS 165.800 applies to defendant's conduct is a matter of statutory interpretation. *See, e.g., State v. Smith*, 259 Or App 36, 312 P3d 552 (2013) (reviewing trial court's denial of the defendant's motion for judgment of acquittal and analyzing the text of ORS 165.572 to determine whether that statute applied to the defendant's conduct). When interpreting a statute, our goal is to discern legislative intent. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). We first look to the statutory text and context to determine the plain meaning of the statute. *Id.* Then, if it is useful to our analysis, we also consider legislative history. *Id.* at 172.

As noted, a "person commits the crime of identity theft if the person * * * utters or converts to the person's own use the personal identification of another person." ORS 165.800.[6] Our analysis of the text and context focuses on an examination of the following terms: "convert," "utter," and "personal identification." When a term is defined by a statute, we look to the statutory definition, but when a term is not statutorily defined, we look to dictionary definitions to ascertain the plain meaning of the term. *See Gaines*, 346 Or at 175 (using dictionary definitions to discern the plain, natural, and ordinary meaning of terms). In this case, ORS 165.800 does not define the terms "convert" or "utter." Thus, we look to dictionary definitions of those terms in context. *See, e.g., State v. Fries*, 344 Or 541, 545-50, 185 P3d 453 (2008) (using context to determine which of multiple definitions is the one that the legislature intended). The term "convert" means, in its most relevant sense, "to appropriate dishonestly or illegally[.]" *Webster's Third New Int'l Dictionary* 499 (unabridged ed 2002). The term "'to utter' is expressive, whether the word has its technical legal meaning, '[t]o put or send (a document) into circulation,' or its plain meaning, '[t]o say, express, or publish.'" *See State v. Porter*, 198 Or App 274, 278, 108 P3d 107 (2005) (quoting *Black's Law*

---

[6] We note that, under the definition of "'[a]nother person'" in ORS 165.800(4), "'[a]nother person'" need not be a "real person," but may be an "imaginary person."

*Dictionary* 1582 (8th ed 2004) (brackets in *Porter*)). The statute defines "'[p]ersonal identification'" such that it "includes, but is not limited to, any written document or electronic data that does, or purports to, provide information" concerning, among other things, a person's name, signature, or social security number. ORS 165.800(4)(b).

In light of those definitions, we first consider whether defendant converted to his own use the personal identification of another person. As noted, defendant concedes that he may have converted to his own use a *signature*, but he argues that he did not violate ORS 165.800 because his conduct did not involve written or electronic documents. But defendant's conduct did, in fact, involve written documents. Defendant signed the name "Sergio Molina" on the property record and fingerprint card. Those written documents were the personal identification of another person. When defendant signed the name "Sergio Molina" on those documents and submitted them to the police, he appropriated the documents bearing that name, representing them as his own for the purpose of deceiving the police as to his identity. In that way, defendant converted to his own use the "personal identification of another person" within the meaning of ORS 165.800.

Next, we consider whether defendant uttered the personal identification of another person. As noted, defendant argues that he did not utter the personal identification of another person, but that he merely "*caused*" the police officer to utter it. We are unpersuaded by defendant's argument. As we have explained, the term "utter" means "to put" a document into circulation. After defendant signed the property record and fingerprint card with the name "Sergio Molina," he submitted the documents to the police, causing them to be used in standard police procedures. The record does not precisely indicate how the property record was used, but it does indicate that defendant's fingerprint card was faxed to AFIS, where it was received and analyzed by an AFIS employee. We reject defendant's contention that the circulation of the fingerprint card is not attributable to defendant, who signed the document with the name of another person and submitted it the police, but to the police officer who faxed it to AFIS. We conclude that, when defendant submitted the

fingerprint card to the police officer, representing it to be his own, defendant "put" the fingerprint card into circulation—that is "uttered"—the "personal identification of another person" within the meaning of ORS 165.800.

Finally, we reject defendant's contention that *Fields* requires us to conclude that ORS 165.800 does not apply to defendant's conduct. The defendant in *Fields* was convicted of identity theft because he misidentified himself to a police officer by giving the police officer his friend's name and personal identifying information.[7] In that decision, in which we reversed the defendant's conviction, we accepted the state's concession, based on legislative history, that "the legislature expressly decided not to apply" the identity theft statute to the facts presented in *Fields*. 191 Or App at 128. When creating the crime of identity theft, the 1999 Legislative Assembly considered a proposed amendment to section 1 of House Bill (HB) 3057 (1999) that would have prohibited a person from representing to a peace officer that the person was another person. *See* HB 3057-4. The version of HB 3057 that was adopted by the House Committee on Judiciary did not include that prohibition. *See* HB 3057 B-Engrossed. The prohibition was deleted because of fiscal concerns and because there were already laws in place that would "deal with people who lie to police officers." Tape Recording, House Committee on Ways and Means, Subcommittee on Public Safety and Regulation, HB 3057, June 17, 1999, Tape 159, Side A (statement of Rep Floyd Prozanski). The enrolled version of HB 3057 also did not include that prohibition. *See* Or Laws 1999, ch 1022, § 1.

But the fact that the 1999 Legislative Assembly did not intend for the identity theft statute to apply to the facts in *Fields* does not require us to conclude that ORS 165.800 does not apply to the facts in this case. First, the facts in *Fields* are significantly different from the facts in this case. In *Fields*, the defendant was stopped by a police officer, and during the course of the traffic stop, the defendant misidentified himself as his friend and gave his friend's personal

---

[7] As mentioned, the briefs filed in *Fields* indicate that the defendant's representations to the police officer were oral representations. 262 Or App 140, 143 n 4, 324 P3d 526 (2014).

identifying information. 191 Or App at 128. Here, defendant was stopped by a police officer, and during the course of the traffic stop, defendant misidentified himself as another person and gave the officer a birth date without providing any written documentation. But defendant's conduct did not end there. Defendant was then arrested and taken to the police department, where, during the booking process, defendant permitted information concerning the personal identification of another person to be included in official police documents. As noted, the property record contained the name and birth date of "Sergio Molina," and the fingerprint card contained the name and birth date of "Sergio Molina" as well as the fingerprints and social security number of "Sergio Molina." Defendant then signed that name to both documents and submitted those documents to the police, causing the fingerprint card to be faxed to AFIS. Because defendant signed and submitted official documents providing information concerning the personal identification of another person, defendant's conduct in this case went well beyond the conduct at issue in *Fields*—mere lying to the police. Second, as noted by the state, the Legislative Assembly amended the identity theft statute in 2001 to criminalize conduct undertaken not only with the intent to defraud, but also with the intent to "deceive[.]" Or Laws 2001, ch 870, § 3. That amendment was intended to clarify that the statute covers conduct that is not motivated by pecuniary or financial gain. Audio Recording, Senate Committee on Judiciary, HB 2918, May 16, 2001, at 1:18:57 (statement of Staff Counsel Craig Prins), http://sos. oregon.gov (accessed Mar 26, 2014) ("deceive" added to identity theft statute to "make it clear" that "any deception is enough" to satisfy the intent element of the statute). As a result, it is clear that the identity theft statute targets not only fraud, but also deception. *Porter*, 198 Or App at 279 ("The harm that the statute targets is deception."). Nothing in the text of ORS 165.800 or its legislative history suggests that the legislature, when amending the identity theft statute in 2001, intended to limit the statute such that it would not apply when a person engages in the conduct at issue in this case with the intent to deceive the police. Therefore, legislative history from 2001, which was not analyzed in *Fields*, leads us to conclude that ORS 165.800 is intended to cover

the conduct at issue in this case and that *Fields* should be limited to its facts.

Viewing the evidence in the light most favorable to the state, we conclude that a rational trier of fact, making reasonable inferences, could have found the essential elements of ORS 165.800 proved beyond a reasonable doubt, based on defendant having signed a property record and fingerprint card, each bearing information concerning the personal identification of another person, with the name of another person, and having submitted those documents to the police with the undisputed intent to deceive the police as to his identity to avoid arrest on an outstanding warrant. The trial court did not err when it denied defendant's motion for judgment of acquittal.

Affirmed.