Richard C. Delin, J.
The defendants, through their attorney, move for inspection of the Grand Jury minutes and for dismissal of the instant indictment, on the ground that it was not founded on legally sufficient evidence. For the reasons set forth below, the defendants’ motion is granted in all respects.
I.
The first count of the indictment accuses the defendants of a violation of subdivision 3 of section 170.10, of the Penal Law, as set forth below: "The Grand Jury of the County of Nassau, by this indictment, accuse the defendants of the crime of forgery in the second degree, committed as follows: The defendants, ocean spray motor sales, inc., and jay altman, an officer in the Corporation doing business as Ocean Spray Motor Sales, Inc., on or about the 30th day of September, 1974, in the County of Nassau, State of New York, with intent to defraud, deceive and injure another, falsely made, completed and altered a written instrument, of which the following is a copy, the same being and purporting to be and calculated to become and to represent, if completed, a written instrument officially issued and created by a public office, public servant and governmental instrumentality, to wit, a MV-50 X118972.”
A completed MV-50 form is adhered to the indictment. The proof indicates that it was a genuine and valid instrument made by an authorized agent of Ocean Spray Motor Sales, Inc. A mere reading of the statutory definitions of "falsely make”, "falsely complete”, and "falsely alter”, as found in subdivisions 4, 5, and 6 of section 170.00 of the Penal Law, make it patently obvious that such proof precludes even a prosecution for simple forgery.
The People urge, in oral argument, that this count, nevertheless, should proceed to trial because the evidence sustains the lesser included offense of offering a false instrument for filing. The court now considers this question.
The MV-50 form, in substance, states that a new 1974 Dodge, vehicle identification number LH23C4B123253, with odometer reading 00004, was sold by Ocean Spray Motor Sales, Inc. (hereinafter called the "Seller”) to Jacqueline L. Rand (hereinafter called the "Buyer”), on September 30, 1974. *773 The best view of the evidence indicates that said vehicle, rather than being "new”, had been in consumer use and that "00004” was not a true indication of the actual mileage. According to the proof, the MV-50 form was completed after the sale of the vehicle, and after the rights of the respective parties had become fixed. The single purpose of the form, at least in this case, was to enable the Buyer to register the vehicle in her name.
With the evidence in mind, we turn to the applicable statute:
"A person is guilty of offering a false instrument for filing in the second degree when, knowing tinat a written instrument contains a false statement or false information, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant.” (Penal Law, § 175.30; emphasis supplied.)
In determining whether the defendants’ actions fall within this statute’s proscription, the court scrutinizes' with care its component words and terms.
It is not of small moment that the Legislature used the words "knowing” and "false”. In People v McHugh (271 App Div 135), the court was faced with a-statute (Penal Law [of 1909], § 1865, subd 2) that made criminal the act of a public officer who receives public money and who "knowingly keeps any false account, or makes any false entry or erasure in any account of, or relating to, any money so received by him”. McHugh willfully and knowingly kept false accounts and made false entries and erasures in his supervisor’s cash book in order to show correct balances, thereby compensating for his lack of accounting skill. He did not steal or attempt to steal any public funds, and correctly deposited and expended the moneys entrusted to him. In reversing the conviction and dismissing the indictment, the court held that the term "knowingly” imports more than mere knowledge, and that it signifies guilty knowledge or evil or fraudulent intent (see, also, People v Moore, 142 App Div 402).
Where, as in the present case, a criminal statute employs the word "false”, it requires proof of something more than the untrue. Its use imports an intention to deceive. It implies an evil intent, a corrupt motive, or an intent to perpetrate some treachery or fraud (Black’s Law Dictionary, 4th ed, pp 722 and *774 1708; 35 C.J.S., False, pp 613-616; United States v Achtner, 144 F2d 49; Dombroski v Metropolitan Life Ins. Co., 126 NJL 545). The law does not intend prosecutions for words written in vanity, boast, feign, silliness or the like, nor should citizens be compelled to defend their written answers to nonessential questions propounded by bureaucratic busybodies. The use of the words "knowingly” and "falsely” imply otherwise.
It seems clear, therefore, that the false statement or information must be material to the written instrument in which it is contained. There must be a sufficient nexus between that which the complete instrument is intended to accomplish and those portions of it which are not accurate. The inaccurate facts or statements must be such as will determine the effectiveness of the whole writing or go to the integrity of the entire instrument. It must reasonably appear that the erroneous information will cause, influence or determine a result that would not otherwise occur.
In this case, there is no proof of nexus between the inaccurate information and the purpose of the MV-50 form. Nor is there proof that the Department of Motor Vehicles would not have allowed the Buyer to register the vehicle had the correct information been placed on the form. Where the Grand Jury proof demonstrates merely untrue statements, a citizen need not suffer trial of an accusation of offering a false instrument for filing.
Moreover, a "written instrument” has been defined as a contract, deed, will, bond, or lease, and as a legal document evidencing legal rights or duties, especially of one party to another (People v Gottlieb, 36 NY2d 629; People v Sansanese, 17 NY2d 302). Certainly under the facts of this case, the MV-50 form is not a "written instrument”.
II.
The second count of the indictment accuses the defendants of a violation of subdivision 1 of section 155.30 of the Penal Law, as set forth below: "And the Grand Jury of the County of Nassau, by this indictment, further accuse the defendants of the crime of grand larceny in the third degree, committed as follows: The defendants, ocean spray motor sales, inc., and jay altman, an officer in the corporation doing business as Ocean Spray Motor Sales, Inc., on or about the 30th day of September,. 1974, in the County of Nassau, State of New York, stole certain property from Jacqueline Rand, having an aggre *775 gate value of over $250.00, by false pretenses, to wit, the defendants did knowingly promise to deliver a new 1974 Dodge automobile bearing vehicle identification number LH23C4B123253, and delivered said automobile which had been used for approximately seven months, thereby depriving the transferee, Jacqueline Rand, of the difference in value thereof in excess of $250.00.”
The vehicle in question was purchased by Bernard and Jacqueline Rand, and it was Mr. Rand who handled negotiations with the Seller. His testimony is crucial to the issue of false pretenses: "We were shopping and it was the third stop we made * * * and this car was offered to me at 3150, which I thought was a very good deal. Mr. Altman indicated to me that the car had been driven, Oh, I don’t know, three or four occasions by his daughter (Sharon), who * * * was in the travel agency business * * * and used the car * * * to the (Kennedy) airport and back, and he indicated to me that this was a new car. As far as anybody was concerned, it was a new car he was selling me with zero mileage on it, which I agreed to* * * (later) Mr. Altman announced to Mr. Peskin that we had just purchased Sharon’s car”.
This testimony, together with the facts that the vehicle was sold and delivered to the Seller on September 24, 1973 (more than a year before the instant transaction) and that the Buyers carefully inspected the vehicle prior to purchase, make it clear that Altman did not represent the vehicle as new and that the Rands did not act in reliance on a pretense that it was new, as alleged in the indictment.
Moreover, both of the experts who testified as to the vehicle’s value make it clear that the Rands purchased the vehicle at less than its average retail value. Such evidence, together with the other facts and circumstances, does not establish the criminal intent necessary for larceny.
III.
The third count of the indictment accuses the defendants of a violation of subdivision 2 of section 392-e, of the General Business Law, in that they allegedly disconnected the mileage measuring device on the vehicle. The proof here purports to be circumstantial: the odometer reading was 004 on May 8, 1974, 003 on June 13, 1974, 001 on August 18, 1974, and 001 on September 30, 1974.
*776 But there is no proof that the odometer was ever properly connected or in proper working order. The accused is entitled to the presumption of innocence before the Grand Jury (People v Bareika, 11 AD2d 292; People v Meli, 48 MisC 2d 595; People v Srebnik, 140 Misc 694), and an indictment must be dismissed unless the proof before that body establishes guilt. The third count is a product of surmise, speculation, and conjecture.
Accordingly, this indictment is ordered dismissed.