# IN THE SUPREME COURT OF IOWA

No. 14–0262

Filed May 1, 2015

**STATE OF IOWA,**

Appellee,

vs.

**JOHN ROBERT HOYMAN,**

Appellant.

_____

Appeal from the Iowa District Court for Warren County, Rebecca Goodgame Ebinger, Judge.

The defendant appeals his conviction and sentence for fraudulent practice following a jury trial. **REVERSED AND REMANDED WITH DIRECTIONS.**

Mark E. Weinhardt and Todd M. Lantz of Weinhardt & Logan, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kyle P. Hanson and Robert H. Sand, Assistant Attorneys General, for appellee.

**MANSFIELD, Justice.**

This case involves an individual who knowingly submitted inaccurate bills to a city while serving as its attorney. The State charged the individual with felonious misconduct in office, *see* Iowa Code § 721.1(1), (2), (3) (2011), first-degree theft, *see id.* §§ 714.1(1), .1(3), .2(1), and first-degree fraudulent practice, *see id.* §§ 714.8(4), .9. The State maintained the defendant had inflated his earnings by billing for trials and prosecutions that did not actually occur. The defendant conceded his past bills were inaccurate, but argued the city largely condoned this practice. He further maintained that he did not bill for more time than he had actually worked overall on city matters.

At trial, the district court dismissed the felonious misconduct charge, and the jury acquitted the defendant of theft. However, the jury found the defendant guilty of first-degree fraudulent practice, and he was sentenced to an indeterminate term of ten years in prison. The defendant now appeals his conviction and sentence.

On appeal, the defendant challenges certain jury instructions. He argues the fraudulent practice marshaling instruction was deficient because it did not require the jury to find an intent to deceive as an element of the offense. The defendant also faults the instructions addressing the degree of the fraudulent practice. *See* Iowa Code § 714.14. The defendant insists those instructions failed to clearly require the jury to determine he had *obtained* money or property through each false entry that was being aggregated, as the aggregation statute requires, not merely that more than ten thousand dollars was *involved*. Finally, as an additional ground for appeal, the defendant argues the district judge hearing his case should have recused herself.

Upon our review, we agree that the jury instructions were flawed as contended by the defendant, and therefore, we reverse the judgment below and remand for a new trial. We need not and do not reach the question of whether the district judge should have recused herself, but instead exercise our authority to direct that the new trial take place before a different judge.

## I. Background Facts and Proceedings.

John Hoyman grew up in Indianola and returned there to practice law beginning in 1984. In 1986, Hoyman began working part time as the Indianola city attorney in addition to managing his own private practice. Hoyman's duties as city attorney included prosecuting simple misdemeanor and traffic cases, representing the city's interests in various civil matters, signing appeal bonds, preparing ordinances, reviewing contracts, providing legal opinions to the city, attending city council meetings, and drafting contracts and other documents for the city. *See* Indianola, Iowa, Code of Ordinances ch. 20.

For the services performed as city attorney, Hoyman would submit a monthly bill to the Indianola city clerk. The bills included a line item for Hoyman's monthly retainer of $1000, which covered attendance at city council meetings and short phone calls. Hoyman then billed the city hourly for additional work not covered by the retainer. For example, Hoyman's bills listed hours he spent prosecuting simple misdemeanor and traffic matters. For each of these matters, he would identify the individual he had prosecuted. Additionally, Hoyman billed the city for civil matters not covered by his retainer.

Over time, Hoyman became less methodical in tracking and reporting his time spent on city legal work. Around 2004, Hoyman received permission from the then-city manager to divide the entire time

he spent in trials evenly among all the individuals who went to trial that day. Also during that time period, the city clerk who processed Hoyman's bills informed Hoyman he could disclose the name of only one of the cases he prosecuted, followed by "et al.," rather than listing all the remaining cases by name. At no time was Hoyman given permission to invent names or bill for trials that did not occur.

In approximately 2006, Hoyman stopped using the names of actual individuals he had prosecuted and began putting phantom names on his bills. Hoyman would use names of people he knew or would select names at random from a phone book or a platting map of Warren County. Additionally, Hoyman began including more trials on his bills than had actually taken place on certain days.

In August 2012, the acting city manager suspected that one of Hoyman's bills was inaccurate. She reported the problem to the Indianola police chief. The chief of police attempted to cross-reference the name Hoyman had listed on the invoice with police records and discovered the Indianola police department had never issued a citation to a person by that name. The police chief then requested more of Hoyman's past invoices from the city manager and determined they also contained names of individuals who had not been cited by the police department. Due to the potential conflict in having a city police department investigate the city's own attorney, the chief of police asked the Iowa Division of Criminal Investigation (DCI) to look into the matter further.

DCI Special Agent Scott Peasley was assigned to investigate Hoyman's billing. Peasley compared Hoyman's invoices to the handwritten court calendar maintained by the Warren County judicial clerk. He determined that most of Hoyman's bills from 2011 and 2012

contained incorrect names and that he had billed for more trials than had actually taken place. Hoyman had even billed for trials on some days when no trials had taken place.

On September 13, 2012, Peasley and another agent interviewed Hoyman about the inaccurate bills. Hoyman admitted making up the names of individuals shown on his bills. He claimed, though, that the names mattered to no one. Hoyman also admitted billing hours for "trials" when in fact no trials had taken place. Hoyman maintained, however, that any overbilling for trial matters merely compensated for underbilling in other areas. Hoyman asserted that while his hours were mislabeled, he never billed on the whole for more time than he actually spent working on behalf of the city. In fact, he claimed he had undercharged the city. Hoyman did say in the interview, "I'm f***ed . . . if we look at the data," and, "If I go down, I go down."

On May 15, 2013, the State charged Hoyman with theft in the first degree, *see* Iowa Code §§ 714.1(1), .1(3), .2(1), fraudulent practice in the first degree, *see* Iowa Code §§ 714.8(4), .9, and felonious misconduct in office, *see* Iowa Code § 721.1(1), (2), (3). The State later amended the trial information to clarify that it was pursuing the fraudulent practice charge under section 714.14, which permits the aggregation of money from multiple acts to qualify as a single fraudulent practice. *See id.* § 714.14. First-degree theft and first-degree fraudulent practice are class "C" felonies. *Id.* §§ 714.2(1), .9. Felonious misconduct in office is a class "D" felony. *Id.* § 721.1. Hoyman pled not guilty to all three charges.

On August 26, Hoyman filed a motion for the case to be assigned to a judge other than two judges he specifically identified. Hoyman explained that he had a personal relationship with both judges and that both had expressed their intention to recuse themselves from the

matter.[1] In response, the chief judge of the district specially assigned Hoyman's case to a designated judge of District 5C, noting the special assignment was warranted due to possible conflicts with judges in the 5A and 5B judicial districts.

Following the special assignment, a hearing took place on September 16 before the newly assigned judge on Hoyman's motion to dismiss Count II and the State's motion for change of venue. The district judge introduced herself and continued:

> Today before the Court we have two issues: the motion to dismiss Count II and the motion for change of venue. Before we discuss those, I wanted to make a brief disclosure to the parties. I know both of the attorneys in this matter, and I wanted to make sure that the parties are aware of the fact that my husband is a good friend of [the prosecutor,] Mr. Sand[,] and my daughter was the flower girl in his wedding. I did not attend the wedding, but there is that relationship there.
>
> I've consulted the Code and the Rules of Judicial Conduct. I don't believe there's anything that would preclude me from continuing to preside in this matter, but I wanted to make that disclosure to the parties.

Hoyman was given time to confer with his attorney, who asked the judge to provide additional information about her relationship with the prosecutor:

> MR. WEINHARDT: Thank you for the brief delay, Your Honor. If I may ask, when was the wedding? MR. SAND: June 2nd, 2010.
>
> MR. WEINHARDT: Okay. And if I may ask of either the Court or Mr. Sand, notwithstanding the fact that the relationship is between Your Honor's spouse and Mr. Sand, do[] Your Honor and Mr. Sand see each other in social situations? THE COURT: I have been in Mr. Sand's home, and he has been to my home on occasions. I don't meet with Mr. Sand outside of the context of my husband ever. I've

---

[1]One of these judges was from District 5A, the other from District 5B. One of them later testified on Hoyman's behalf at trial.

never had the opportunity to be personally in a personal relationship with Mr. Sand outside of the context of his relationship with my spouse.

Based on this information, Hoyman's attorney requested the district court to recuse itself from the case:

> Your Honor, I've conferred with my client[] about this, and based upon what we expected about the facts -- and this is sort of consistent with that -- it's our belief that this does create an appearance issue, even if it is not a substantive issue. And it's difficult, without delving into much more facts, to get into that. But we do believe that it creates an appearance issue, and so we would ask that the Court recuse.

The court denied the motion to recuse:

> Thank you for your comments. The Court declines to recuse. The issues in this case are -- I have no knowledge of the defendant. I know Mr. Weinhardt as well. I see Mr. Weinhardt at school events and have known him in my life prior to the bench.
>
> I don't believe that the Rules of Judicial Conduct require me to recuse. I was just refreshing my recollection, and I did research prior to today's events. In this instance, there is a -- particularly referencing Iowa Court Rule 51:2.11, which requires recusal in cases where any appearance would suggest that the Court would [not] be impartial.
>
> In this instance, the Court believes that my obligation to hear cases that come before me would require me to continue to preside over this case. 51:2.7 requires, "A judge shall hear and decide matters assigned to the judge . . . ." This case has been specifically assigned to me. I don't know either of the two other judges who were previously recused. I have no knowledge of the defendant, and I am [uniquely] situated to be able to preside over this in a fair and impartial matter. The motion to recuse is denied.

Trial took place from December 16 to December 19. The crux of Hoyman's defense was that while his record-keeping and billing processes were inaccurate, he never intended to collect money he had not earned from the city. Hoyman asserted he had never submitted a monthly bill totaling more hours than he had actually worked. At the

close of the defense case, the court granted Hoyman's motion for judgment of acquittal on the felonious misconduct in office charge and thereby dismissed Count III. The court also limited the time period covered by the remaining charges to 2011 and 2012, finding the State had presented insufficient evidence on earlier time periods.

The court gave the following marshaling instruction on Count II, the fraudulent practice charge:

**JURY INSTRUCTION NO. 23**

**FRAUDULENT PRACTICES: MARSHALING INSTRUCTION**

In Count II of the Trial Information, defendant John Robert Hoyman is charged with Fraudulent Practices. The State [must] prove all of the following elements:

1. From 2011 through 2012, defendant Hoyman made any entry in a public record or records of a business; and

2. Mr. Hoyman knew the entry to be false.

If the State has proved all of these elements, the defendant is guilty. You must then determine the degree of Fraudulent Practice, as explained to you in Instruction Number 26. If the State has failed to prove any of the elements, defendant Hoyman is not guilty.

In addition, the court instructed the jury as follows relating to degrees of fraudulent practice:

**JURY INSTRUCTION NO. 25**

**FRAUDULENT PRACTICES -- DEFINITION -- SINGLE**

If money is obtained by two or more acts from the same person or location so that the fraudulent practices are attributable to a single scheme, plan, or conspiracy, these acts may be considered a single fraudulent practice and the value may be the total value of all the money involved.

**JURY INSTRUCTION NO. 26**

**DEGREES OF FRAUDULENT PRACTICES**

If you find defendant Hoyman guilty of Fraudulent Practices, you should then determine the degree of Fraudulent Practices. Attached to the verdict form is a question which must be answered, and by so doing, you will determine the degree of Fraudulent Practices.

In answering the question, the State must prove the value of the property involved. You will check the blank next to the appropriate value on the verdict form.

The following are the different degrees of Fraudulent Practices:

1. Property valued $200 or less is Fifth Degree Fraudulent Practices.

2. Property valued more than $200 but not more than $500 is Fourth Degree Fraudulent Practices.

3. Property valued more than $500 but not more than $1,000 is Third Degree Fraudulent Practices.

4. Property valued more than $1,000 but not more than $10,000 is Second Degree Fraudulent Practices.

5. Property valued more than $10,000 is First Degree Fraudulent Practices.

Hoyman had objected to Instruction No. 23 on the ground it did not include "specific intent to deceive" as an element. Hoyman also had objected to Instruction No. 26, asserting that the use of the word "involved" diluted the State's burden of proof when a case was being tried on an aggregation theory. Hoyman elaborated that Instruction No. 26 needed to tell the jury that if they were using the aggregation theory from Instruction No. 25, he had to have obtained property from each entry that was being aggregated. Hoyman further argued that the instructions needed to make clear that if the jury was not relying on an aggregation theory, then the more serious degrees of fraudulent practice were not available because the largest single entry was only $558. The court overruled these objections.

The jury found Hoyman not guilty of theft and guilty of first-degree fraudulent practice. Hoyman moved for a new trial. He claimed, among other things, that the jury instructions were incorrect as a matter of law for failing to include intent to deceive as an element and for not requiring proof that Hoyman "obtained" anything through his alleged false entries when those entries were being aggregated to determine the degree of fraudulent practice.

The court denied the motion in a written decision on February 17, 2014. It stated that it did not view intent to deceive as an element of this fraudulent practice:

> The Court reaffirms its previous ruling that the offense of Fraudulent Practices does not require proof of specific intent. . . . Categorization of an offense as a fraudulent practice does not, in and of itself, make an offense a specific intent crime. And, the use of the word "false" in the statute should not be interpreted to require proof of an evil motive or intent. (Citation omitted.)

The court went on to note that the statute only required the act to be done "knowingly" and not with any specific intent. *See* Iowa Code § 714.8(4).

The court also held that Hoyman was not prejudiced by the absence of "obtaining funds" language from Instruction No. 26. It said, "The instructions tracked the statutory language and gave independent meaning to the words 'involved' and 'obtained.' "

On February 20, the district court sentenced Hoyman to an indeterminate term of ten years' imprisonment, following the State's recommendation rather than Hoyman's request for a deferred judgment.

The court also ordered Hoyman to pay a $1000 fine and entered an order of restitution.[2]

Hoyman appealed, claiming the district court erred in not including intent to deceive as an element in the fraudulent practice marshaling instruction, in using the term "involved" rather than "obtained" in the degrees-of-fraudulent-practice instruction, and in declining to disqualify itself. We retained the appeal.

## II. Standard of Review.

"We review challenges to jury instructions for correction of errors at law." *State v. Cordero*, ___ N.W.2d ___, ___ (Iowa 2015) (internal quotation marks omitted). "Error in giving or refusing to give a jury instruction does not warrant reversal unless it results in prejudice to the complaining party." *Id.* (internal quotation marks omitted). "[P]rejudice will be found . . . where the instruction could reasonably have misled or misdirected the jury." *State v. Becker*, 818 N.W.2d 135, 141 (Iowa 2012).

> We review a judge's recusal decision for an abuse of discretion. The court abuses its discretion when its decision is based on untenable grounds or it has acted unreasonably. A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law.

*State v. Millsap*, 704 N.W.2d 426, 432 (Iowa 2005) (citations omitted) (internal quotation marks omitted).

## III. Jury Instructions.

Hoyman contends the trial court erred in its instructions concerning the elements of fraudulent practice and the degrees of fraudulent practice. We will take up these two arguments in turn.

---

[2]The restitution matter is currently the subject of a separate appeal.

**A. Intent to Deceive.** Hoyman was charged with a fraudulent practice pertaining to public records. The statute provides, in relevant part:

> A person who does any of the following acts is guilty of a fraudulent practice:
>
> . . . .
>
> 4. Makes any entry in or alteration of any public records, or any records of any corporation, partnership, or other business enterprise or nonprofit enterprise, knowing the same to be false.

Iowa Code § 714.8(4).

The marshaling instruction (Instruction No. 23) required the State to prove two elements: that Hoyman made an entry in a public record or the records of a business and that he knew the entry to be false. Hoyman claims the trial court should have included a *third* element in the instruction—namely, that Hoyman had an intent to deceive when he made the entry. Hoyman urges this element is implicit in the word "false." He further maintains that without an instruction expressly requiring the jury to find intent to deceive, one could be convicted for making a trivial but knowing misstatement in a billing record even when the actual facts were known to or did not matter to the recipient of the bill. Indeed, Hoyman insists that is what happened in this case: Although Hoyman admittedly submitted inaccurate billing records, he contends the city knew his records were inaccurate and accepted the practice because of the administrative burden associated with submitting accurate records and because Hoyman, *in toto*, was not overbilling the city.

The State responds that Iowa Code section 714.8(4)—unlike certain other subsections of 714.8—does not mention intent to defraud.

*Compare id.* § 714.8(4), *with id.* § 714.8(9) (stating a person is guilty of a fraudulent practice if he or she "[a]lters or renders inoperative or inaccurate any meter or measuring device . . . with the intent to defraud any person"), *and id.* § 714.8(18)(*a*) (making it a fraudulent practice when a person "[m]anufactures, creates, reproduces, alters, possesses, uses, transfers, or otherwise knowingly contributes to the production or use of a fraudulent retail sales receipt or universal product code label with intent to defraud another person engaged in the business of retailing"). The State also notes that several other subsections of section 714.8 expressly require proof of other forms of specific intent. *See, e.g.*, *id.* § 714.8(6) ("[f]or the purpose of soliciting assistance, contributions, or other things of value"); *id.* § 714.8(7) ("with the intent that [a] token or [coin-operated] device may be so used"); *id.* § 714.8(9) ("with the intent to defraud any person"); *id.* § 714.8(11) ("for the purpose of concealing or misrepresenting"); *id.* § 714.8(12) ("with the intent to obtain public assistance"); *id.* § 714.8(13)(*a*)(1) ("for the purpose of obtaining benefits under targeted small business programs if the transferor would otherwise not be qualified for such programs"); *id.* § 714.8(13)(*a*)(2) ("for the purpose of transferring the contract to another for a percentage"); *id.* § 714.8(13)(*a*)(3) ("for the purpose of obtaining benefits"). In the State's view, the principle of *expressio unius est exclusio alterius* compels the conclusion that an intent to deceive is not a required element of the section 714.8(4) offense.

The State further relies on our decisions in *State v. Osborn*, 368 N.W.2d 68 (Iowa 1985), and *State v. McSorley*, 549 N.W.2d 807 (Iowa 1996) (per curiam). In *Osborn*, we rejected the defendant's contention that willful failure to file a required income tax return or pay required taxes, a fraudulent practice prohibited by Iowa Code sections 422.25(5)

and 714.8(10) (1979),[3] required proof of an intent to defraud. *See* 368 N.W.2d at 69–70. We stated that the legislature did not require such proof "merely by designating the offenses as fraudulent practices." *Id.* at 70. We added that "[o]ne basic flaw in [the defendant's] argument is that even the offenses specified as fraudulent practices in section 714.8 do not all require proof of intent to defraud." *Id.*

In *McSorley*, we held the defendant's conviction for making false entries in corporate records in violation of Iowa Code section 714.8(4) (1995) did not require proof that he had actually obtained any money, services, or property as a result of the false entries. 549 N.W.2d at 808, 810. In dicta, we added,

> With the exception of subparts 6 and 9 of the statute, which involve an intent to defraud, the other provisions in the first nine subparts of section 714.8 require an act, the normal consequence of which is to accomplish some improper result apart from the prohibited act itself.

*Id.* at 810. In a footnote, we elaborated,

> The Iowa Uniform Jury Instructions for these nine crimes suggest that the offenses described in subparts 6 through 9 of the act require a showing of intent to defraud and that those described in subparts 1 through 5 do not. With respect to subparts 6 and 9, this distinction appears to follow the language of the statute. With respect to subparts 7 and 8, the distinction appears to be debatable and, indeed, subpart 8 appears to be only a slightly different version of the same situation embraced in subpart 2.

*Id.* n.3.

In the State's view, *Osborn* and *McSorley* make it clear that the district court's Instruction No. 23 was correct. Intent to defraud is not

---

[3]Iowa Code section 714.8(10) is a catchall making it a fraudulent practice to do "any act expressly declared to be a fraudulent practice by any other section of the Code," and Iowa Code section 422.25(5) expressly makes it a fraudulent practice for a taxpayer to "willfully fail[] to pay [the] tax . . . or file [the] return, at the time or times required by law."

an element of the section 714.8(4) offense, and the State only has to prove the defendant made an entry or alteration covered by that section, "knowing the same to be false." *See* Iowa Code § 714.8(4) (2011).

Hoyman counters, however, that an intent to deceive is a lower threshold than an intent to defraud and is not addressed by *Osborn* or *McSorley*. In Hoyman's view, to deceive means to mislead, whereas to defraud means to mislead with the further purpose of obtaining some gain from the victim of deceit. As he puts it, "Deceit can occur without intent to defraud, but defrauding someone requires deceit."

We agree with this distinction. Indeed, this distinction drove the United States Supreme Court's famous decision in *McNally v. United States*, 483 U.S. 350, 107 S. Ct. 2875, 97 L. Ed. 2d 292 (1987), *superseded by statute*, 18 U.S.C. § 1346 (1994). In that case, the Court held that the federal mail fraud statute, 18 U.S.C. § 1341, which applied to "any scheme or artifice to defraud," did not criminalize dishonest conduct such as taking secret kickbacks that merely deprived citizens of their right to honest government. *Id.* at 356, 359–60, 107 S. Ct. at 2879, 2881–82, 97 L. Ed. 2d at 299–300, 302 (internal quotation marks omitted). The Court explained, "[T]he words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane, or overreaching.'" *Id.* at 358, 107 S. Ct. at 2881, 97 L. Ed. 2d at 301 (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S. Ct. 511, 512, 68 L. Ed. 968, 970 (1924)). Although Congress later overruled *McNally* by statute, redefining the term "scheme or artifice to defraud" to include a "scheme or artifice to deprive another of the intangible right of honest services," *see* Pub. L. 100-690, Title VII, § 7603(a), 120 Stat. 4508 (codified at 18 U.S.C. § 1346), we think the

Supreme Court correctly recognized that defrauding another is generally viewed as a narrower concept than merely deceiving another. *See also United States v. Godwin*, 566 F.2d 975, 976 (5th Cir. 1978) ("Intent to deceive and intent to defraud are not synonymous. Deceive is to cause to believe the false or to mislead. Defraud is to deprive of some right, interest or property by deceit."); *accord United States v. Yermian*, 468 U.S. 63, 73 n.12, 104 S. Ct. 2936, 2942 n.12, 82 L. Ed. 2d 53, 61 n.12 (1984).[4]

---

[4]A number of other courts have also have viewed the intent to defraud as narrower than the intent to deceive. *See, e.g.*, *United States v. Umawa Oke Imo*, 739 F.3d 226, 236 (5th Cir. 2014) ("A defendant acts with the intent to defraud when he acts knowingly with the specific intent to deceive *for the purpose of* causing pecuniary loss to another or bringing about some financial gain to himself." (Emphasis added.) (Internal quotation marks omitted.)); *Singh v. Att'y Gen. of the U.S.*, 677 F.3d 503, 516 n.18 (3d Cir. 2012) ("It bears noting that Singh was only convicted of having an intent to deceive, not an intent to defraud."); *Ahmed v. Holder*, 324 F. App'x 82, 84 (2d Cir. 2009) ("There are many situations in which a person may have the intent to deceive without having the intent to defraud. For instance, a homeowner who, for the purpose of deterring burglaries, intentionally deceives passersby regarding the presence of an alarm system is not acting with the intent to defraud."); *State v. McFall*, 439 P.2d 805, 808 (Ariz. 1968) (en banc) ("The mens rea [for the crime of forgery] must include the intent to defraud. An intent to deceive is not alone sufficient to constitute the crime."); *People v. Pugh*, 127 Cal. Rptr. 2d 770, 774 (Ct. App. 2002) ("An intent to defraud is an intent to deceive another person for the purpose of gaining a material advantage over that person or to induce that person to part with property or alter that person's position by some false statement or false representation of fact, wrongful concealment or suppression of the truth or by any artifice or act designed to deceive."); *State v. Yurch*, 654 A.2d 1246, 1251 (Conn. App. Ct. 1995) (rejecting the argument that "an intent to deceive . . . is the equivalent of an intent to defraud" because "[t]o defraud . . . means to deceive in order to cheat or to deceive in a manner calculated to cause injury"); *Hill v. State*, 483 N.W.2d 57, 63 (Minn. 1992) (Tomljanovich, J., dissenting) ("As the majority points out, welfare fraud and theft both require a specific intent to defraud whereas the federal statute requires something less—a specific intent to deceive."); *People v. Hankin*, 667 N.Y.S.2d 890, 895 (Crim. Ct. 1997) ("It is apparent from the nature of this transaction . . . that while there may well have been an intent to deceive, there was absolutely no intent to defraud . . . ."); *State v. Medina*, 324 P.3d 526, 530 (Or. Ct. App. 2014) (noting Oregon's legislature amended the state's identity theft statute "to criminalize conduct undertaken not only with the intent to defraud, but also with the intent to deceive" (internal quotation marks omitted)); *Wassom v. State Farm Mut. Auto. Ins. Co.*, 173 S.W.3d 775, 783 (Tenn. Ct. App. 2005) ("We believe this argument misinterprets an intent to deceive versus an intent to defraud.").

While prior caselaw does not *foreclose* us from holding that an intent to deceive—as opposed to an intent to defraud—is an element of the Iowa Code section 714.8(4) offense, we must apply the statute as written. Thus, we now get to the question whether the phrase "knowing the same to be false," as it appears in section 714.8(4), embodies the intent to deceive requirement we have just discussed. Significantly, the general assembly did not say "knowing the same to be incorrect," or even "knowing the same to be untrue." Instead, it requires proof that the defendant knew the entry to be "false." Hoyman urges that the word "false" is meant to distinguish between an entry that the defendant merely knew was inaccurate and an entry that the defendant knew was deceitful because he or she made it with the intent to mislead. Hoyman argues, in other words, that section 714.8(4) does not criminalize mere knowingly incorrect entries that were not "false" because the defendant believed the reviewer of the entry was aware of the inaccuracy or would not care whether it was accurate or not (perhaps because the inaccuracy was trivial).

The idea that "false" carries with it the notion of deception finds support in our caselaw. On the subject of affidavits in applications for search warrants, we have stated "[a] 'false' affidavit statement is one which misleads the magistrate," not merely a "negligible" untruth. *See State v. Groff*, 323 N.W.2d 204, 210 (Iowa 1982). In *Groff*, the affidavit misstated that the defendants "owned" the land on which marijuana was being grown. *Id.* Although the defendants only farmed the land on which the drugs were being cultivated, we nevertheless determined that this technical inaccuracy did not rise to the level of a false statement undermining the veracity of the affidavit. *Id.* at 210*; see also Hatcher v. Dunn,* 102 Iowa 411, 415, 71 N.W. 343, 344 (1897) (stating that the word

false "means something more than untrue; it means something designedly untrue, deceitful, and implies an intention to perpetrate some treachery or fraud" (internal quotation marks omitted)).

Such a reading of section 714.8(4) also appears to be consistent with the general understanding of the crime of falsifying a record. *Black's Law Dictionary* 720 (10th ed. 2014) (defining "falsifying a record" as "[t]he crime of making false entries or otherwise tampering with a public record with the intent to deceive or injure, or to conceal wrongdoing").

At various times, courts in other jurisdictions have held that "false" has a legal meaning that connotes deception rather than signifying mere untruth. The Connecticut Supreme Court concluded that a statute barring falsely certifying as to the administration of an oath required a jury instruction including the intent to deceive. *State v. Tedesco*, 397 A.2d 1352, 1354, 1359 (Conn. 1978). The court explained that while the word "false" had a broad meaning in everyday usage, it had a specialized meaning in the law:

> The use of the word "falsely" in the statute is of significance. In the vernacular it may mean untrue or designedly untrue, implying an intent to deceive. In jurisprudence, however, the word "false" implies something more than mere untruth: it imports knowledge and a specific intent to deceive. Thus, the use of the word "false" in [the statute] imports a requirement of a specific intent to deceive.

*Id.* at 1358 (citations omitted).

Additionally, a New York court considering a criminal statute similar to Iowa Code section 714.8(4) found that the crime included an intent to deceive element. *People v. Altman*, 372 N.Y.S.2d 926, 929–30 (Nassau Cnty. Ct. 1975). Like section 714.8(4), the New York statute

involved public records, required the act to be done "knowingly," and used the term "false":

> A person is guilty of offering a false instrument for filing in the second degree when, Knowing that a Written instrument contains a False statement or False information, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant.

*Id.* at 929 (internal quotation marks omitted). The court dismissed the count of the indictment alleging a violation of this law because proof of intent to deceive was missing. *See id.* at 930. The court explained that the legislature's use of the word "false" had to be interpreted as incorporating intent to deceive in order to avoid criminalizing otherwise harmless conduct:

> Where, as in the present case, a criminal statute employs the word "false", it requires proof of something more than the untrue. Its use imports an intention to deceive. It implies an evil intent, a corrupt motive, or an intent to perpetrate some treachery or fraud. The law does not intend prosecutions for words written in vanity, boast, feign, silliness or the like, nor should citizens be compelled to defend their written answers to non-essential questions propounded by [bureaucratic] busybodies. The use of the words "knowingly" and "falsely" imply otherwise.

*Id.* at 929 (citations omitted).

The Texas Court of Appeals likewise interpreted a statute employing the word "false" to require an intent to deceive. *Smith v. State*, 363 S.W.3d 761, 775–76 (Tex. App. 2012). The defendant was charged with failing to identify herself while a fugitive from justice. *See id.* at 773. The statute made it a crime "if the person intentionally gives a 'false' or 'fictitious' name to a peace officer who has lawfully detained or arrested the person and the person is a 'fugitive from justice' at the time of the offense." *Id.* The statute did not provide a definition for either

"false" or "fictitious" so the court looked to the terms' ordinary and common meanings. *Id.* at 775. It noted, "A review of [the] authorities consistently reflects that 'false' commonly means 'not true' and may encompass an intent to deceive." *Id.* The court went on to construe the statute so as to require deceptive intent for both the "false" and "fictitious" elements: "[T]here must be sufficient evidence that it was Smith's conscious objective or desire to give [the officer] a 'false' name (i.e., one that is not 'true' to deceive him) or a 'fictitious' name (one that is 'imaginary' or 'not real' to deceive him)." *Id.* at 776.

Another court interpreted a statute criminalizing an alien's false statement of citizenship to require an intent to deceive, basing this conclusion largely on the law's use of the word "false." *See United States v. Martinez,* 73 F. Supp. 403, 404, 407 (M.D. Pa. 1947). The court stated, "In law this word [(false)] usually means something more than untrue; it means something designedly untrue *and deceitful* and implies an intention to perpetuate some treachery or fraud." *Id.* at 407 (emphasis added); *see also United States v. Anguiano–Morfin,* 713 F.3d 1208, 1210 (9th Cir. 2013) (not requiring the government to prove intent to deceive, but requiring it to prove that the defendant made the false claim of U.S. citizenship to "someone with good reason to inquire into his citizenship status" even though this element was not set forth in the statute (internal quotation marks omitted)).

In *United States v. Snider,* a federal court of appeals held that for a taxpayer to be convicted of supplying "false or fraudulent" information on a withholding certificate, the information had to be either "supplied with an intent to deceive" or "false in the sense of deceptive." 502 F.2d 645, 655 (4th Cir. 1974). The court explained that this interpretation was

"reasonable and consistent with past interpretations that 'false' means more than merely 'untrue' or 'incorrect.' " *Id.*

Along the same lines, at least one United States Court of Appeals has interpreted the federal statute prohibiting the making of a materially false statement to a governmental agency as incorporating an intent to deceive element based on the statute's use of the word "false." *See United States v. Boffil-Rivera*, 607 F.3d 736, 741 (11th Cir. 2010) (stating that for purposes of 18 U.S.C. § 1001, "the word 'false' requires an intent to deceive or mislead"); *see also United States v. Geisen*, 612 F.3d 471, 487 (6th Cir. 2010) (indicating that an "intent to deceive" must be proved to establish a violation of 18 U.S.C. § 1001). Other federal appellate courts disagree. *See United States v. Natale*, 719 F.3d 719, 739–40 & n.12 (7th Cir. 2013) (holding that "[n]either the text nor context of the statute suggests [18 U.S.C. § 1035—worded similarly to 18 U.S.C. § 1001] requires a specific intent to deceive"); *United States v. Riccio*, 529 F.3d 40, 46–47 (1st Cir. 2008) (rejecting the argument that 18 U.S.C. § 1001 requires an intent to deceive). But this disagreement supports the proposition that the word "false" as used in Iowa Code section 714.8(4) is at least ambiguous on the question whether an intent to deceive must be proved. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1062 (9th Cir. 2009) (noting "the word 'falsity' is susceptible to differing dictionary meanings" and concluding a statute using the word "falsity" was therefore ambiguous and the court should resort to canons of statutory construction in order to interpret it); *Dean v. State*, 849 N.W.2d 138, 146 (Neb. 2014) ("Because the word 'false' is susceptible to more than one reasonable interpretation, we conclude that it is ambiguous and therefore subject to judicial interpretation."); *see also Merriam-Webster's Collegiate Dictionary* 451 (11th ed. 2003) (providing alternative

definitions of "false," including "intentionally untrue," "adjusted or made so as to deceive," and "intended or tending to mislead").

Other instances exist where courts have interpreted false statement laws as not requiring proof of intent to deceive. For example, a federal district court in Pennsylvania declined to find an intent-to-deceive element in a federal law proscribing making false statements on forms required to be kept by firearms dealers. *United States v. Mongiello*, 442 F. Supp. 835, 838 (E.D. Pa. 1977). The court noted that a separate section of the same law expressly required proof of an intent to deceive (a circumstance not present here). *See id.* Again, this divergence of interpretations of the word "false" simply highlights the ambiguity inherent in the term and necessitates our resort to other interpretive aids. *See State v. Meyers*, 799 N.W.2d 132, 141 (Iowa 2011) ("When a statute is ambiguous, we employ our familiar rules of statutory interpretation to aid us in ascertaining the intent of the legislature.").

One such aid is the principle that we interpret statutes when possible to avoid untoward results. As was discussed at the oral argument in this case, Iowa Code section 714.8(4), unlike many false statement laws, does not require that the false entry be *material*. If intent to deceive did not need to be shown, this would have the effect of greatly expanding the statute's scope. For example, by way of contrast, the federal false statement statute discussed above makes it a crime for a person to "make[] any *materially* false, fictitious, or fraudulent statement or representation." 18 U.S.C. § 1001(a)(2) (2012) (emphasis added). Materiality means "a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed," and is a question for the jury. *United States v. Gaudin*, 515 U.S. 506, 509, 522–23, 115 S. Ct. 2310, 2313, 2320, 132 L. Ed. 2d 444,

449, 458 (1995) (alteration in original) (internal quotation marks omitted).

Accordingly, if we interpreted section 714.8(4) as criminalizing any knowingly incorrect entry in a public record, regardless of its significance or insignificance and regardless of whether the maker of the entry intended to deceive anyone, its scope would be breathtakingly broad. Any trivial misstatement in a record would become a crime, so long as the person making the entry knew it was incorrect. For example, under the State's interpretive theory, Hoyman could be prosecuted for using old stationery for his billing that had an incorrect address. Potentially, the governor could be prosecuted for signing an official decree that he or she knew contained an untrue statement, even if that statement were entirely immaterial. Or, because the statute also criminalizes false entries made in "any records of any corporation," *see* Iowa Code § 714.8(4), a small business owner who backdated corporate minutes for entirely benign reasons could become a class "C" felon. *See* Iowa Code § 714.9 (stating that fraudulent practice in the first degree is a class "C" felony).

Normally we read statutory language so it makes sense. *See* Iowa Code § 4.4(3) ("In enacting a statute it is presumed that . . . [a] just and reasonable result is intended."); *State v. Adams*, 810 N.W.2d 365, 377 (Iowa 2012) (noting among other things that statutes are interpreted "in a manner to avoid absurd results" (internal quotation marks omitted)); *Andover Volunteer Fire Dep't v. Grinnell Mut. Reins. Co.*, 787 N.W.2d 75, 86 (Iowa 2010) (indicating that we "avoid creating impractical or absurd results" when interpreting a criminal statute); *Altman*, 372 N.Y.S.2d at 929 (implying an intent to deceive requirement in a false records statute because "[t]he law does not intend prosecutions for words written in

vanity, boast, feign, silliness or the like"); *see also* Iowa Code § 4.6(5) (providing the court may consider "[t]he consequences of a particular construction" when a statute is ambiguous). A more sensible and practical interpretation of section 714.8(4) would make it a crime only if the incorrect entry was intended to fool someone.

Additionally, criminalizing *any* entry in a public record that amounted to an intentional untruth could raise serious constitutional problems. What if an executive, legislative, or judicial branch official in Iowa said in his or her website biography, knowing the statement to be untrue, that he or she had received a military honor? Such conduct would be worthy of condemnation, and under the State's interpretation of the statute it would amount to a fraudulent practice. But under a recent United States Supreme Court decision, it could *not* be prosecuted as a crime without the presence of some additional element. *See United States v. Alvarez,* 567 U.S. ___, ___, 132 S. Ct. 2537, 2547–48, 183 L. Ed. 2d 574, 590–91 (2012) (plurality opinion). A majority of the Court concluded the Stolen Valor Act violated the First Amendment because it criminalized mere falsity. *See id.* at ___, 132 S. Ct. at 2547–48, 183 L. Ed. 2d at 590–91 (plurality opinion) (reasoning the statute "has no clear limiting principle"); *id.* at ___, 132 S. Ct. at 2552–53, 183 L. Ed. 2d at 596 (Breyer, J., concurring) (opining the statute should be read "as criminalizing only false factual statements made with knowledge of their falsity and with the intent that they be taken as true"). The Court stated that in the context of defamation and fraud, it had always "been careful to instruct that falsity alone may not suffice to bring the speech outside the First Amendment." *Id.* at ___, 132 S. Ct. at 2545, 183 L. Ed. 2d at 588 (plurality opinion); *see also Sult v. State,* 906 So. 2d 1013, 1021–22 (Fla. 2005) (holding that a statute criminalizing the unauthorized use of

police badges or other indicia of authority was overbroad and reached a substantial amount of constitutionally protected conduct unless it included an intent to deceive element).

The State would have us interpret section 714.8(4) as criminalizing the same conduct that *Alvarez* said could not constitutionally be prosecuted. *See id.* at ___, 132 S. Ct. at 2547–48, 183 L. Ed. 2d at 590–91 (plurality opinion); *id.* at ___, 132 S. Ct. at 2552–53, 183 L. Ed. 2d at 596 (Breyer, J., concurring). In construing a statute, we presume the legislature intended it to comply with both the United States and Iowa Constitutions. *See* Iowa Code § 4.4(1). This brings into play the principle of constitutional avoidance, which encourages us to "steer clear of 'constitutional shoals' when possible." *State v. Iowa Dist. Ct.*, 843 N.W.2d 76, 85 (Iowa 2014); *see also In re Guardianship of Kennedy*, 845 N.W.2d 707, 714–15 (Iowa 2014) (applying the principle of constitutional avoidance to interpret a statute to require advance court approval of a guardian's decision to sterilize an intellectually disabled person because any other approach "would raise serious due process concerns").

Another interpretive tool to which we may revert is the law's legislative history and the circumstances of its enactment. *See* Iowa Code §§ 4.6(1)–(3); *State v. McIver*, 858 N.W.2d 699, 704 (Iowa 2015). Iowa Code section 714.8(4) became law as part of the comprehensive criminal code that was adopted in 1976 and took effect in 1978. *See* 1976 Iowa Acts ch. 1245, ch. 1, § 1408(4) (codified at Iowa Code § 714.8(4) (Supp. 1977)). A new crime of "fraudulent practices" was created by bringing together some old offenses and adding some new ones. *Compare* 1976 Iowa Acts ch. 1245, ch. 1, § 1408, *with* Iowa Code §§ 713.13–.16, .26, .35–.38 (1975) (repealed 1978); *id.* § 714.12. There was no counterpart to the "public records" portion of section 714.8(4) in

prior law. A contemporary observer—while conceding that intent to make an unauthorized gain was not a stated element of this particular fraudulent practice—wrote, "[A] practical reading of this statute in both its historical and contemporary contexts compels the conclusion that this crime is limited." Kermit L. Dunahoo, *The New Iowa Criminal Code*, 29 Drake L. Rev. 237, 383 (1980). Interpreting the word "false" as meaning "deceptive" is, we believe, such a practical reading. We do not believe the legislature intended to plow new ground by criminalizing every knowingly untrue statement in a public record.

For these reasons, we hold that intent to deceive is an element of the Iowa Code section 714.8(4) crime. A jury instruction that omits an element of a criminal offense is erroneous and not a correct statement of the law. *See State v. Pearson*, 804 N.W.2d 260, 265 n.1 (Iowa 2011) (holding the omission of one element of the offense from a jury instruction necessitated a new trial); *State v. Schuler*, 774 N.W.2d 294, 298–99 (Iowa 2009) (finding an instruction that allowed the jury to convict the defendant without finding all elements of the offense was erroneous and ordering a new trial). Although Instruction No. 23 mirrored the language of the statute in requiring the State to prove that "Mr. Hoyman knew the entry to be false," as the district court correctly observed, it did not explain that false means deceitful in this context. And the problem, as we have already discussed, is that false has been given two interpretations: (1) knowingly untrue and (2) knowingly untrue and intended to deceive. We cannot assume that the jury gave it the latter interpretation. This is especially true in light of the State's rebuttal closing argument:

> Plus, if you need any more certainty that there isn't some intent to deceive that's required for fraudulent practices, I'll ask you to turn to the marshaling instruction

for theft and for fraudulent practices. If I remember correctly, I think it's 19 for theft, and I think it is 22 for fraudulent practices. Nineteen and twenty-three.

If you'll look at -- if you'll look at that theft instruction, it has the word "deceived" in it; right? He has to have intentionally deceived someone. That's theft. Did he do that? You bet he did.

But now look at fraudulent practices. That word "deceived" isn't in there. It's just the word "false." And I submit to you this: The word "false" means false. Use your common sense. That's what it is. It's false.

In short, the State suggested that false as used in the fraudulent practice instruction did not necessitate proof Hoyman had intended to deceive anyone.[5]

This difference between a deceit and a mere sentient inaccuracy may have affected the outcome in this case. Despite the State's best efforts to prove that Hoyman concocted phony trials and borrowed names in order to bilk the city out of money, he was acquitted of the theft charge. This then leaves two possibilities, each of which is supported by substantial evidence in the record. One is that Hoyman was trying to dupe the city but the State failed to prove beyond a reasonable doubt that Hoyman's scheme netted him anything. The other is Hoyman's version of events: While his bills were "false" in the sense of being untrue (listing incorrect names and mislabeling hours as "trial work"), Hoyman lacked the intent to deceive the city because he actually worked at least as much time as he billed and the city was aware that his bills were not reliable indicators of the work he actually performed on specific days (and didn't care). We need not decide whether omission of the intent-to-

---

[5]In a similar but less explicit manner, the State equated "false" with "knowingly untrue" in its initial closing argument. Regarding the fraudulent practices count, the prosecutor said, "[T]his could not be more straightforward. Yeah, there's entries in public records and in business records, and, yeah, they're false."

deceive element from the fraudulent practice instruction is subject to a harmless error analysis. *See Schuler*, 774 N.W.2d at 299–300 (also declining to decide this issue). The State does not argue harmless error, and it appears clear from the record that Hoyman may have been prejudiced by failure to instruct on intent to deceive.

Therefore, we hold that in a fraudulent practice case arising under Iowa Code section 714.8(4), the jury should be instructed that "false" means the defendant made the entry or alteration with intent to deceive. Because the jury was not so instructed here, and the error was not harmless, we reverse and remand for a new trial.

While "an instruction need not contain or mirror the precise language of the applicable statute" to be legally proper, *see id.* at 298, it also bears emphasis that the converse is true: An instruction is not necessarily adequate just because it repeats what the statute says. For example, in *State v. Soboroff*, we reversed the conviction of a defendant who was found guilty of making threats in violation of Iowa Code section 712.8. *See* 798 N.W.2d 1, 2, 10 (Iowa 2011). Although section 712.8 does not define the term "threats" or "threatens," we held the jury instructions needed to define the term and their failure to do so necessitated a new trial. *See id.* at 9–10. In our view, the jury had to receive a definition of threats so they were aware of the "limited, proper scope" of the term. *Id.* at 10. As in *Soboroff*, we are dealing here with a crime whose potential breadth has constitutional implications. We believe the term "false" should have been defined for the jury.

**B. Amount "Involved" Versus Amount "Obtained."** Because this case must be retried, we will consider Hoyman's other challenge to the jury instructions. *See State v. Dudley*, 766 N.W.2d 606, 615 (Iowa 2009) (addressing "the other issues in this appeal that are likely to arise

upon remand"). Hoyman also claims that Instruction Nos. 25 and 26 erroneously allowed the jury to find him guilty of first-degree fraudulent practice on an aggregation theory, without actually determining he had obtained any property through the separate acts that were being aggregated. The nub of Hoyman's complaint is that the aggregation statute requires proof that Hoyman "obtained" money or property on each occasion being aggregated, but the jury instructions read as a whole did not impose this requirement.

The aggregation statute provided for the following at the time of Hoyman's alleged offense:

> **714.14 Value for purposes of fraudulent practices.**
>
> . . . .
>
> If money or property or service is obtained by two or more acts from the same person or location, or from different persons by two or more acts which occur in approximately the same location or time period so that the fraudulent practices are attributable to a single scheme, plan, or conspiracy, these acts may be considered as a single fraudulent practice and the value may be the total value of all money, property, and service involved.

Iowa Code § 714.14 (2011).[6] It is true that the court's Instruction No. 25 essentially paraphrased this language. However, Hoyman complains that Instruction No. 26, which told the jury how to determine the degree of fraudulent practice, merely said the State "must prove the value of the property involved." In Hoyman's view, the omission of the word "obtained" from Instruction No. 26 could easily have given the jury the impression that Hoyman could be found guilty of a fraudulent practice based on a combination of false entries that totaled more than $10,000, regardless of whether he obtained money or property by means of those

---

[6]As we discuss below, that statute has since been changed.

entries.  This danger is especially acute here, according to Hoyman, given that the jury acquitted him of the theft charge.

The State responds with two arguments that seemingly contradict each other.  First, the State maintains that "the State was not required to prove Hoyman obtained anything of value."  The State points out that both Instruction No. 25 and Instruction No. 26 merely tracked the wording of the relevant statutes.  According to the State, *McSorley* makes clear that the degree of fraudulent practices under Iowa Code sections 714.9 through 714.13 depends only on the amount of property "involved," which does not require that the defendant have obtained anything.  *See* 549 N.W.2d at 808–10; *see also State v. Messer*, 822 N.W.2d 116, 120 (Iowa 2012) (finding that the degree of fraudulent practice was based on the property "involved"—i.e., the value of the untaxed cigarettes—rather than the amount of unpaid tax).

The problem with the State's first argument is that the State relied on an aggregation theory, and the aggregation law at the time required that the defendant "obtained" property through each act that was part of the aggregation.  *See* Iowa Code § 714.14.  In *McSorley*, we did not discuss the aggregation statute, other than to observe in a brief footnote that "[t]he concept of money, property, or service 'obtained' is also suggested in § 714.14, which defines value for purposes of fraudulent practices."  549 N.W.2d at 809 n.1.  This brief comment, if anything, supports Hoyman's position.  Hence, in order to combine various entries and treat them as a single fraudulent practice for purposes of determining the degree of the offense, the State had to prove Hoyman obtained property on these various occasions.  And the degrees-of-fraudulent-practice instruction arguably undercut that requirement by using only the word "involved."

Further supporting Hoyman's side of the argument is the fact that the general assembly amended the aggregation statute in 2014. *See* 2014 Iowa Acts ch. 1055, § 3 (codified at Iowa Code § 714.14 (2015)). At that time, it replaced the word "obtained" in section 714.14 with the word "involved":

> 2. If money, ~~or~~ property, or a service ~~is obtained by~~ involved in two or more acts of fraudulent practice is from the same person or location, or from different persons by two or more acts which occur in approximately the same location or time period so that the fraudulent practices are attributable to a single scheme, plan, or conspiracy, these acts may be considered as a single fraudulent practice and the value may be the total value of all money, property, and service involved.

*Id.* The State maintains that replacing "involved" with "obtained" merely clarified the law. However, we had drawn a clear contrast between the two terms in *McSorley*. *See* 549 N.W.2d at 810. At a minimum, the amendment indicates the legislature thought there was an ambiguity in the prior law. *See Davis v. State*, 682 N.W.2d 58, 61 (Iowa 2004) ("When interpreting amendments, we will assume the amendment sought to accomplish some purpose and was not a futile exercise."). If so, the principle that we construe criminal statutes narrowly, otherwise known as the rule of lenity, should be taken into account. *See State v. Halverson*, 857 N.W.2d 632, 637–38 (Iowa 2015); *State v. Hagen*, 840 N.W.2d 140, 146 (Iowa 2013). We believe the pre-2014 law required that the defendant have obtained money, property, or service by each act being aggregated.

The State's second argument, contrary to its first, is that the State *did* prove and the jury *did* find Hoyman obtained property through each of his inaccurate bills. The State asserts, "[R]ead as a whole, the jury instructions in Hoyman's case embraced the concept of obtaining

something of value." The State emphasizes the jury was told to read all the instructions and would not have relied on Instruction No. 26 to the exclusion of Instruction No. 25.

Notwithstanding the State's contentions, on our review, we agree with Hoyman that the instructions taken together were potentially confusing and contradictory. In this case, Instruction No. 25 correctly advised the jury that Hoyman had to have obtained money from each act being aggregated. However, Instruction No. 26—without cross-referencing Instruction No. 25—simply said "the State must prove the value of the property involved." Furthermore, Instruction No. 23, the marshaling instruction, directed the jury to Instruction No. 26 if it found the defendant guilty of fraudulent practice, and Instruction No. 26 began, "If you find defendant Hoyman guilty of Fraudulent Practices, you should then determine the degree of Fraudulent Practices." Instruction No. 26, again, told the jury to do this based on "the value of the property involved." Thus, while the two instructions cited to each other, neither Instruction No. 23 nor Instruction No. 26 indicated that Hoyman ever had to have obtained anything. In our view, there is a real risk the jury could have read past Instruction No. 25 (and its single use of the word "obtained"), focusing only on the word "involved" in Instruction Nos. 23 and 26.

This risk is heightened by some specific facts of this trial. Hoyman asserts, and the State does not dispute, that the largest single entry in dispute was $558. This would have supported, at most, a conviction for third-degree fraudulent practice. *See* Iowa Code § 714.11(1) (2011). To find Hoyman guilty of first-degree fraudulent practice, the jury had to have aggregated a number of entries. And, in order to utilize an aggregation theory, the jury should have found that Hoyman obtained

something by each entry. *See* Iowa Code § 714.14. But again, Instruction No. 26 omitted any reference to the obtaining requirement or to the instruction that imposed this requirement. And, as already noted, the jury acquitted Hoyman of having committed theft in any amount. To more clearly delineate the jury's duties, we believe Instruction No. 26 should have advised the jury that the requirements of Instruction No. 25 had to be met if multiple entries were being combined to determine the value involved for the degree of fraudulent practice.

Our law is well-established that contradictory and confusing instructions will necessitate a new trial. *See Burkhalter v. Burkhalter*, 841 N.W.2d 93, 97 (Iowa 2013) ("When the challenged instruction is conflicting and confusing, error is presumed prejudicial and reversal is required." (Internal quotation marks omitted.)). In *State v. Watts*, the trial court included one instruction that placed the burden of proving insanity upon the defendant and another instruction that placed the burden of proving sanity upon the state. 244 N.W.2d 586, 588 (Iowa 1976). We required reversal, stating the "[i]nstructions . . . were contradictory and therefore confusing. There is no way to tell which of the contradictory instructions the jury followed." *Id.*; *see also State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010) (stating that "[a]n erroneous jury instruction cannot necessarily be overcome by part of the same instruction which correctly states the law" and reversing for a new trial where the jury may have been misled by improper language in the jury instructions regarding the penalties the defendant faced); *State v. McCormack*, 293 N.W.2d 209, 211–12 (Iowa 1980) (requiring reversal when the jury instructions, when read together, were confusing because they "[l]ack[ed] a clear explanation" of the applicable law); *State v. Osmundson*, 241 N.W.2d 892, 893 (Iowa 1976) (reversing the defendant's

conviction for delivery of a controlled substance when one instruction omitted the scienter requirement of the crime while another instruction stated it, noting this "created a conflict between the two instructions, and [the court was] at a loss to know which instruction the jury followed"); *State v. Leins*, 234 N.W.2d 645, 648–49 (Iowa 1975) (requiring reversal when the court instructed the jury with both the correct test for entrapment and an improper test for entrapment because the court was "unable to discern which rule the jury applied"); *State v. Hansen*, 203 N.W.2d 216, 218, 222 (Iowa 1972) (requiring reversal when one instruction improperly conveyed to the jury that an unrebutted statutory presumption "required, rather than permitted, a finding defendant was" guilty, despite the fact another instruction properly stated the presumption of innocence).

We need not decide whether any instructional error with respect to Instruction Nos. 25 and 26, by itself, would have necessitated a new trial. Since this case must be retried in any event, we hold that appropriate instructions under the pre-2014 fraudulent practices law should make clear that if the jury is determining the degree of fraudulent practice based on an aggregation theory, the State must prove beyond a reasonable doubt that the defendant obtained some money, property, or service through each act being aggregated.

## IV. Conclusion.

For the foregoing reasons, we reverse Hoyman's conviction and sentence and remand for a new trial. Because we find that instructional error occurred, we need not and do not reach the question whether the district judge hearing the case should have recused herself. Instead, we simply exercise our authority to order the case to be heard by a different judge on remand. *See, e.g., State v. Robinson*, 389 N.W.2d 401, 404

(Iowa 1986) (directing that the trial on remand be before a different trial judge even though the record did not disclose the trial judge was prejudiced against defense counsel as claimed); *see also* Iowa Const. art. V, § 4 ("The supreme court . . . shall have power to issue all writs and process necessary to secure justice to parties, and shall exercise a supervisory and administrative control over all inferior judicial tribunals throughout the state").

**REVERSED AND REMANDED WITH DIRECTIONS.**