# IN THE COURT OF APPEALS OF IOWA

No. 19-0878
Filed January 21, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TRAVIS JAMAL FOREMAN,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.

Travis Jamal Foreman appeals his convictions for assault causing serious injury and two counts of intimidation with a dangerous weapon with intent. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Alexander Smith of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Heard by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Travis Foreman appeals his conviction for charges related to a shoot-out outside a Des Moines bar.

## I.    Factual Background

This case arises out of a barroom brawl that began with rude remarks and ended on the bar's patio with an exchange of gunfire.  On the night of the incident, a man nicknamed "Kiki" and his wife went to a bar in Des Moines to celebrate accomplishments related to Kiki's business.  The couple arrived at the bar around nine or ten that night.  A few of their friends were at the bar when they arrived, as was Foreman and a few of Foreman's friends, including a man named Josh.

The night was uneventful until Kiki learned that Foreman had tried to flirt with Kiki's wife.  Kiki was outside the bar speaking with a friend when Josh came up to him and told him about Foreman's attempts.  Kiki dismissed the incident at first, but, after learning Foreman's efforts had involved repeated attempts, he went inside to address the situation.  Kiki confronted Foreman and told him that Foreman was being disrespectful to Kiki's wife.  Foreman asked Kiki to point out his wife.  When he did, Foreman made a derogatory remark about her in response.

Tension started to build between Kiki and Foreman.  Kiki again asked Foreman to stop being disrespectful.  Foreman told him, "Oh, I don't want that bitch and she don't want me either."  The two were standing inches apart from one another when other patrons of the bar separated them.

Foreman approached Kiki a second time soon after.  Kiki testified that Foreman reached out his hand as if to shake Kiki's hand.  When Kiki accepted the handshake offer, Foreman pulled Kiki in close to him and said, "Hey man, just so

you know, here are my guys. I'll beat you and your wife's ass right now." Kiki explained that, at that point, he believed he was surrounded by Foreman's friends. Apparently feeling threatened, Kiki punched Foreman in the face.

The bar's surveillance cameras captured much of the interaction, including the punch and what transpired inside the bar in the moments that followed. After Kiki struck Foreman, people from Foreman's group rushed toward Kiki, and mayhem ensued. One of Foreman's associates participating in the brawl was swinging a pool cue at the mass of bodies involved in the fracas. At one point, Kiki's wife got between the combatants, and the fight briefly spilled out of view of the surveillance cameras. Kiki testified that he believed that the fight consisted of his wife and him against Foreman and four others. The wrestling and punching mass of people eventually came back into the camera's view as the participants collapsed into a pile on the floor near the counter of the bar. While on the ground, Kiki managed to pull a handgun out of his back pocket and rise to his feet.

At that point, Kiki and his wife backed to a corner near the back door leading to the bar's patio while Kiki tried to keep the others at bay while still displaying his handgun. Some of the opposing combatants continued to approach Kiki, including at least one person still holding a pool cue. Another of the opposing combatants was captured on video holding a handgun down to his side near the periphery of the group confronting Kiki. After some semblance of order had been regained, but the situation was still tense, Kiki's wife began throwing beer bottles at one or more of the people standing near Kiki and her. Kiki tried to restrain his wife and pull her behind him in the corner. While that was happening, one of a group of four women on the patio opened the back door behind Kiki and his wife, grabbed Kiki's wife by

her hair, and pulled her outside. Kiki immediately followed. The events taking place on the patio were not captured on surveillance video. However, inside the bar, surveillance footage showed Foreman take out his own handgun and, along with several others, go out the front door of the bar on the opposite side of the building.

Kiki testified he caught up with the four women dragging his wife and tried to separate them. He then noticed the people he had been fighting inside the bar had come around the side of the building from the front entrance. Kiki testified that, at that point, he announced "warning shot" and fired his handgun in the air. Right after firing the warning shot, Kiki testified that he saw Foreman shoot at him, his wife, and the group of four women. Kiki returned fire, firing two shots at Foreman, who was hiding behind "the entrance of the gate" to the patio area. Josh (the man who reported Foreman's efforts to flirt with Kiki's wife) was between Kiki and Foreman. He was shot during the exchange of gunfire, as was the woman who had dragged Kiki's wife out of the bar by her hair. The woman was shot in the shin, which required her shin to be replaced.

Kiki and his wife left the scene in their vehicle shortly after the shooting and went home. Later that night, Kiki turned himself into the police and surrendered his handgun.

Foreman also left the scene immediately after the shooting. A Des Moines police officer, who was responding to reports of the shooting and injuries at the bar, observed Foreman's vehicle "fleeing the scene at a high rate of speed." The officer conducted a traffic stop and discovered Foreman along with a front-seat passenger named Craig. Craig was later identified as one of Foreman's friends

who was present at the bar during the shooting. While interacting with the officer conducting the traffic stop, Foreman repeatedly denied any knowledge of the shooting and denied being at the bar. The officer detained Foreman and placed him in the back of the squad car. A search of Foreman's vehicle resulted in the discovery of a nine-millimeter semi-automatic handgun wedged between the driver's seat and the center console and a box of nine-millimeter ammunition in the backseat. The handgun and its magazine were empty and the slide was locked open, consistent with the gun having been fired until empty. The officers also discovered a second handgun below the passenger seat. The officer ran Foreman's driver's license and discovered Foreman's license status was barred.

The officer transported Foreman to the police station and conducted a search. He found two small bags of cocaine in Foreman's front pocket. Foreman was then interviewed by a detective. During the interview, Foreman denied having any active involvement in the shooting, telling the detective that, while he was at the bar that night, he did not participate in the fight or the shooting. Instead, Foreman claimed he was there to provide rides to his friends. He also denied knowing about the handguns found in his vehicle. Foreman explained to the detective that he fled the bar with Craig after hearing gunshots. However, surveillance video from a nearby gas station showed Foreman leave the scene in his vehicle, stop in the gas station's parking lot, and pick up Craig before accelerating away and being stopped by the officer.

Des Moines police searched the patio area outside the bar and found shell casings for a nine-millimeter handgun. The casings were tested and determined to have been fired from the nine-millimeter handgun found in Foreman's vehicle

between his seat and the center console. The bullets in the injured woman's leg were extracted and tested as well, but those bullets could not be matched to Foreman's gun. However, a bullet remained in her foot and it was determined to be a nine-millimeter bullet. The gun found under Craig's seat was also tested, but it did not match any of the casings or bullets recovered from the scene. In addition, the brand of ammunition in that gun's clip did not match the brand of ammunition found at the scene.

## II.        Charges and Trial Outcome

Foreman was charged with seven crimes:

Count I:  willful injury causing serious injury in violation of Iowa Code section 708.4(1) (2018) in relation to the shooting of the woman;

Count II:  willful injury causing serious injury in relation to the shooting of Josh;

Count III:  intimidation with a dangerous weapon with intent in violation of Iowa Code section 708.6 for firing his handgun into the group of people on the bar's patio;

Count IV:  intimidation with a dangerous weapon with intent for firing his handgun at or into the bar building;

Count V:  possession of a controlled substance with intent to deliver in violation of Iowa Code section 124.401(1)(c)(2);

Count VI:  driving while barred in violation of Iowa Code section 321.561; and

Count VII:  carrying a concealed weapon in violation of Iowa Code section 724.4(1).

Following trial, the jury returned verdicts on all counts.  On count I, Foreman was found guilty of the lesser-included offense of assault causing serious injury in violation of Iowa Code section 708.2.  On count II, Foreman was found not guilty.  On counts III, IV, VI, and VII, he was found guilty as charged.  On count V, he was found guilty of the lesser-included offense of possession of cocaine.  He was sentenced and this appeal followed.  On appeal, Foreman challenges only his convictions for counts I, III, and IV.  He does not challenge his convictions for counts V, VI, or VII

## III.     Sufficiency of the Evidence

Foreman first argues insufficient evidence supported either of the counts charging him with intimidation with a dangerous weapon with intent (counts III and IV).

### A.     Standard of Review

"We will uphold the verdict on a sufficiency-of-evidence claim if substantial evidence supports it."  *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020).  "In reviewing a challenge to the sufficiency of evidence supporting a guilty verdict, we consider 'all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'"  *Id.* (quoting *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014)).  "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt."  *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017).

**B.      Merits**

The jury was given the following instruction on the intimidation with a dangerous weapon with intent charge in count III:

INSTRUCTION NO. 37

In Count III, the State must prove all of the following elements of Intimidation with a Dangerous Weapon with Intent:
1. On or about November 17, 2018, Mr. Foreman or someone he aided and abetted shot a dangerous weapon within an assembly of people.
2. A person actually experienced fear of serious injury and his/her fear was reasonable under the existing circumstances.
3. Mr. Foreman or someone he aided and abetted shot the dangerous weapon with the specific intent to injure or cause fear or anger in another.

If you find the State has proved all of the elements, Mr. Foreman is guilty of Intimidation with a Dangerous Weapon with Intent in Count III.  If the State has proved elements 1 and 2 but not element 3, Mr. Foreman is guilty of the lesser-included offense of Intimidation with a Dangerous Weapon without Intent.  If the State has failed to prove any one of the elements, Mr. Foreman is not guilty in Count III.

The instruction for count IV (instruction number 38) was identical, with the exception of the reference to the count number and element 1 referenced shooting a dangerous weapon "at or into a building which was occupied by another person" rather than "within an assembly of people."

**1.      Actual Fear**

Foreman first argues the State has not shown either the assembly of people on the patio (for count III) or the people inside the building (for count IV) experienced "actual fear" of serious injury sufficient to satisfy the second element of the charges.  We find this argument to lack merit.  Both direct and circumstantial evidence supports the finding that the people on the patio and the people inside the bar experienced actual fear.

As for direct evidence, Kiki's wife testified that, after shots were fired, she "was so scared and sick" she "started throwing up everywhere." She further testified she was so "panicked and scared" she could not recall everything she did when she got home. The woman who was shot described being "paralyzed" and unable to move after being shot.

Furthermore, circumstantial evidence supports a finding of actual fear. *See State v. Ross*, 845 N.W.2d 692, 701 (Iowa 2014) ("The statute does not require the members of the assembly specifically testify that they were scared."). Camera footage from inside the bar shows patrons frantically trying to flee the patio after shots were fired. Additionally, evidence was presented that someone locked the back entrance to the bar in the moments after the shooting. This evidence is enough to support a finding that the people on the patio and the people inside the bar experienced actual fear.

### 2. Assembly of People

Next, Foreman argues insufficient evidence supports count III because the evidence does not support a finding that he was shooting into an assembly of people. Instead, he insists, the evidence could only support a finding that he was shooting at Kiki because Kiki was standing up, while Kiki's wife and the four women who jumped her were on the ground.

We are unpersuaded by this argument. The phrase "within an assembly of people," as used in section 708.6, is given its ordinary meaning. *State v. Bush*, 518 N.W.2d 778, 780 (Iowa 1994). Additionally, the jurors were instructed that "within an assembly of people" means "into or through two or more persons at the same place." So long as two or more people are "at the same place," as the people

on the bar's patio were, they are an "assembly of people" under section 708.6. *See id.* (finding the defendant had fired his gun "into or through" an assembly of people where there was one person in front of him, two crouched behind a nearby car, and approximately ten people behind him, all within fifteen to twenty feet). When the shooting began, Kiki's wife was on the ground fighting with the four women, with Kiki trying to extract her from them. This placed Kiki right next to or in the group of women, and all six people in the group "were placed at risk when the gun was fired" sufficient to show the shot was "within an assembly of people." *In re N.M.E.*, 564 N.W.2d 451, 454 (Iowa Ct. App. 1997) (finding that the defendant had fired a handgun "within an assembly of people" where there were four people in front of the defendant and two on each side). We find substantial evidence supporting the jury's determination Foreman fired the gun into an assembly of people.

### 3. At or Into a Building

Foreman's final sufficiency-of-the-evidence argument relates to count IV. Foreman argues the State failed to prove the first element of the offense because the patio was not a "building." The State argues the patio was a building, and, even if it is not, the evidence shows Foreman was firing toward the bar building itself.

From our reading of the statute, we conclude the patio is not a "building." As Foreman points out, had the legislature intended to include both enclosed structures and similar appurtenances such as decks and patios, it could have said so or used the term "occupied structure," which Iowa Code section 702.12 defines, in part, as "any building, structure, appurtenances to buildings and structures." Our

supreme court has defined "appurtenance" as "[t]hat which belongs to something else; an adjunct; an appendage. Something annexed to another thing more worthy as principal, and which passes as incident to it, as a right of way or easement to land." *State v. Pace*, 602 N.W.2d 764, 770 (Iowa 1999) (quoting Black's Law Dictionary 103 (6th ed.1990)). Based on that definition, fenced enclosures, a driveway, a step or stoop outside the door of a home, and a cement walkway leading to the step have all been determined to fall within the definition of an appurtenance. *Id.* The fact that "occupied structure" is defined so as to include both buildings and appurtenances to buildings suggests that a "building" does not include appurtenances. At most, the patio was an appurtenance to the bar. It was not a building. Therefore, there was insufficient evidence that Foreman fired in a building.

Having concluded the patio was not a building, we must still address whether there was sufficient evidence Foreman fired at or into the bar building. The State argues there was sufficient evidence. We find the record inadequate to reach that conclusion. In its appellate brief, the State points to photographs of the patio area and Kiki's testimony to support the assertion that Foreman was shooting in the direction of the building. The photographs themselves do not show to where the bullets were shot, and Kiki's testimony is similarly unhelpful:

> Q. . . . Can you show us on the photograph the area where you observed your wife being pulled out of the bar? A. (The witness complies.)
> Q. And can you tell us where she was pulled or taken to? A. In this area right here (indicating).
> Q. And is that the same area where shots were fired at you by Travis Foreman? A. Yes, that's where they started.
> Q. You said, "That's where they started." Did they go somewhere else as well? A. Well, then, when I moved, this – when

I moved – when I was moving, this is the pillar that I was hiding behind.

Q. And when you were in this area here where you pointed where your wife was, again, who else was with you and your wife? A. Just the four girls that were jumping her.

Q. So two or more people? A. Yes, sir.

Q. And the shots started in that area by Travis Foreman? A. The shots came from—

Q. Do you want to show us on the photo? If you can just point where it was coming from. A. If there was more of the photo, it would be back towards that way (indicating).

Q. So the shots would be coming back towards here, but coming towards you where my finger is pointing (indicating)? A. That's correct.

Q. That would have been the area where you, your wife, [the injured woman], and others were? A. Yes, sir.

Q. And where were you when you fired back at Travis Foreman? A. I was here and then went towards this way (indicating).

Q. And where was [Josh]? A. He was in the middle, like right over in here (indicating).

Based on this record, we cannot determine where the shots were coming from and whether Foreman was firing toward the building. The above excerpt provides a good example of why trial counsel needs to take extra care in making a record when a witness is pointing or otherwise making gestures in the courtroom. The references to "right here," "that's where they started," "this is the pillar," "this area here where you pointed," "that area," "back towards that way," "coming back towards here," "where my finger is pointing," "I was here and then went towards this way," "right over in here," and "(indicating)" do us no good without a frame of reference or any description that would enable us to decipher what is being described. If a party, in this case the State, wants to rely on a witness's identification of events and locations by pointing at photos, maps, or other physical evidence, it is that party's burden to develop the record so that we can make sense of such testimony. Alternatively, the State could have had the witness simply

describe the direction the shots were fired in relation to the building. In this case, none of that was done. As a result, we cannot conclude sufficient evidence supports the finding that Foreman fired into or at the building as alleged in count IV. We therefore reverse and remand to the district court for a judgment of acquittal on count IV.

## IV. Ineffective Assistance of Counsel

Foreman next argues his trial counsel provided ineffective assistance in relation to (1) counsel's failure to request a jury instruction on the meaning of the term "assault" and (2) counsel's failure to request an instruction on self-defense that incorporated recent changes to the law (i.e., "stand your ground"). For the reasons below, we reject both arguments.[1]

### A. Standard of Review

We review ineffective-assistance-of-counsel claims de novo. *State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015). "We prefer to reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge. However, we depart from this preference in cases where the record is adequate to evaluate the . . . claim." *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). We find the record adequate to evaluate Foreman's claims.

### B. Merits

---

[1] Recent changes to Iowa law do not permit us to hear ineffective-assistance-of-counsel claims on direct appeal, barring certain exceptions that do not apply here. *See* 2019 Iowa Acts ch. 140 § 31. However, the Iowa Supreme Court has determined that those changes "do not apply to a direct appeal from a judgment and sentence entered before July 1, 2019." *State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019). Because the judgment and sentence here were entered before July 1, 2019, we are not foreclosed from considering Foreman's ineffective-assistance claims.

To establish a claim for ineffective assistance of counsel, "a defendant must show (1) that counsel failed to perform an essential duty and (2) that prejudice resulted." *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020); *see also Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

> To prove counsel failed to perform an essential duty, the defendant "must show that counsel's performance was deficient," meaning counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." The court determines "whether counsel's assistance was reasonable considering all the circumstances."

*Kuhse*, 937 N.W.2d at 628 (citation omitted) (quoting *Strickland*, 466 U.S. at 688). To show prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. And "[t]he likelihood of a different result must be substantial, not just conceivable." *Kuhse*, 937 N.W.2d at 628 (quoting *State v. Ambrose*, 861 N.W.2d 550, 557 (Iowa 2015)).

### 1. Definition of Assault

Foreman first argues trial counsel was ineffective for failing to object to the jury instruction given by the district court regarding a lesser-included offense in count I. The lesser-included offense at issue was assault causing serious injury. The instruction at issue stated:

INSTRUCTION NO. 27

In Count I, the State must prove all of the following elements of the lesser-included offense of Assault Causing Serious Injury:
1. On or about November 17, 2018, Mr. Foreman or someone he aided and abetted assaulted [the injured woman].
2. The act of Mr. Foreman or someone he aided and abetted caused a serious injury to [the injured woman].

3. Mr. Foreman acted without justification.

If you find the State has proved all of the elements, Mr. Foreman is guilty of Assault Causing Serious Injury in Count I. If the State has failed to prove any one of the elements, Mr. Foreman is not guilty of Assault Causing Serious Injury in Count I and you will then consider the lesser-included offense of Willful Injury Causing Bodily Injury as explained in Instruction No. 28.

Defense counsel did not object to this instruction.[2]

As Foreman correctly points out, instruction number 27 was deficient in that it did not adequately set forth the elements of assault. "Assault," as used in instruction number 27, is defined by the Iowa Code as follows:

A person commits an assault when, without justification, the person does any of the following:

a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

c. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

Iowa Code § 708.1(2). None of these definitional requirements were incorporated into instruction number 27, and Foreman claims ineffective assistance of counsel as a result of defense counsel's failure to object to the instruction.

At first blush, Foreman's claim appears to have merit. However, upon closer analysis, Foreman is unable to meet the prejudice prong on his ineffective-assistance-of-counsel claim. It is true that "there [is] no possible strategic reason for failing to object to the omission of an element of an offense," *State v. Harris*, 891 N.W.2d 182, 187 (Iowa 2017). Nevertheless, Foreman still needs to prove he

---

[2] We do not address a similar instruction with respect to count II, as Foreman was acquitted on count II.

was prejudiced by this error. This he cannot do. Foreman's conviction of intimidation with a dangerous weapon with intent, as charged in count III—which, as addressed above, we affirm—necessarily required Foreman to have committed an assault. *See State v. Johnson*, 534 N.W.2d 118, 125 (Iowa Ct. App. 1995) (discussing section 708.6 and concluding "it is impossible to shoot, throw, launch, or discharge a dangerous weapon into an occupied vehicle or building or an assembly of people, and place the occupants in reasonable apprehension of serious injury without simultaneously committing an assault"). Thus, Foreman cannot show a reasonable probability of a different result had the jury received an instruction fully defining "assault," and thus cannot show trial counsel was ineffective for failing to request one or object to the instruction as given.

### 2.    Stand-Your-Ground Instruction

Foreman next argues that trial counsel was ineffective for failing to request a self-defense instruction that included Iowa's stand-your-ground provision, codified as Iowa Code section 704.1(3), which states "A person who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force." The instructions regarding justification given by the district court stated as follows:

INSTRUCTION NO. 54

A person is justified in using reasonable force if he reasonably believes the force is necessary to defend himself from any imminent use of unlawful force.

If the State has proved any one of the following elements, the defendant was not justified:

1. Mr. Foreman started or continued the incident which resulted in injury.

2. An alternative course of action was available to Mr. Foreman.

3. Mr. Foreman did not believe he was in imminent danger of death or injury and the use of force was not necessary to save him.

4. Mr. Foreman did not have reasonable grounds for the belief.

5. The force used by Mr. Foreman was unreasonable.

## INSTRUCTION NO. 55

Concerning element number 3 of Instruction No. 54, Mr. Foreman was not required to act with perfect judgment. However, he was required to act with the care and caution a reasonable person would have used under the circumstances which existed at that time.

If in Mr. Foreman's mind the danger was actual, real, imminent or unavoidable, even though it did not exist, that is sufficient if a reasonable person would have seen it in the same light.

## INSTRUCTION NO. 56

Concerning element number 4 of Instruction No. 54 Mr. Foreman claims danger existed.

You are to consider the danger or apparent danger of injury from the viewpoint of a reasonable person under the circumstances which existed at that time.

It is not necessary that there was actual danger, but the defendant must have acted in an honest and sincere belief that the danger actually existed.

Apparent danger with knowledge that no real danger existed is no excuse for using force.

## INSTRUCTION NO. 57

Concerning element number 2 of Instruction No. 54, if Mr. Foreman is confronted with the use of unlawful force against him, he is required to avoid the confrontation by seeking an alternative course of action before he is justified in repelling the force used against him.

Foreman asserts paragraph 2 of instruction number 54 was erroneous, thus allowing the jury to conclude the State had overcome his justification defense if the State proved "[a]n alternative course of action was available to Mr. Foreman." Foreman claims this instruction ignored his stand-your-ground rights, and defense counsel was ineffective for not objecting to it.

Foreman may be correct that the instruction given would not accurately reflect current law if the stand-your-ground provision applied. However, by its terms, the stand-your-ground provision does not apply if a defendant is engaged in illegal activity. *See* Iowa Code § 704.1(3) ("A person who is not engaged in illegal activity has no duty to retreat"). Here, the jury found Foreman guilty of carrying a firearm without a permit, and Foreman does not challenge that conviction. The Iowa Supreme Court found, in a case very similar factually to this one, that illegal possession of a firearm disqualifies a defendant from asserting the current "stand-your-ground" justification defense. *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 871 (Iowa 2019) (interpreting the "illegal activity" language in the stand-your-ground provision and holding "[e]ven assuming the implied duty to retreat involves only illegal activities germane to the use of force, Baltazar's possession of the handgun was directly related to the shooting death of Mercado. In this case, Baltazar's possession of the handgun was germane to the use of deadly force."). In *Lorenzo Baltazar*, the defendant "armed himself with a handgun with the purpose to track down and confront" his eventual victim. *Id.* A similar fact pattern occurred in this case. After Kiki left out the back entrance, the cameras inside the bar show Foreman draw his handgun and exit out the front door. He circled the outside of the bar to re-engage with Kiki and ended up shooting at Kiki, his wife, and the four women who jumped Kiki's wife. We conclude *Lorenzo Baltazar* controls, and thus find trial counsel did not breach an essential duty by failing to object to the justification instructions' failure to include stand-your-ground provisions, as Foreman was not entitled to stand-your-ground protections.

**V.     Jury Instructions Claims**

Finally, Foreman appeals several rulings related to the inclusion or exclusion of several jury instructions.

### A.    Standard of Review

Challenges to jury instructions are reviewed for correction of errors at law. *State v. Hoyman*, 863 N.W.2d 1, 7 (Iowa 2015).  The corrections-of-errors-at-law standard of review applies to challenges based on instructions given as well as the refusal to give requested instructions.  *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 (Iowa 2016) ("[W]e clarify today that . . . we review refusals to give a requested jury instruction for correction of errors at law.").  "Error in giving or refusing to give a jury instruction does not warrant reversal unless it results in prejudice to the complaining party."  *Hoyman*, 863 N.W.2d at 7.  "When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice."  *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985).  Foreman made no claim at the district court and makes no claim on appeal that the claimed errors in the jury instructions were of constitutional magnitude. Therefore, we review for whether Foreman's rights were injuriously affected or he suffered a miscarriage of justice*.  Id.*  Even though the claimed errors are not alleged to be of a constitutional magnitude, however, we presume prejudice and reverse unless the record affirmatively establishes there was no prejudice.  *State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010).

### B.    Merits

Foreman raises three complaints regarding the instructions as given.

#### 1.    Justification Defense to Intimidation Charge

Foreman requested jury instructions asserting a justification defense related to the charge of intimidation with a dangerous weapon. Included in his request was for the marshaling instruction to include as an element of the offense that Foreman acted without justification. The district court refused to give the instruction, concluding it did not apply to intimidation with a dangerous weapon charges. Foreman claims this was error. The State concedes that, if there was sufficient evidence to support a justification defense, it was erroneous to conclude the defense could not apply to the intimidation charges. However, the State asserts there was insufficient evidence to support any justification defense, and, even if there was, any error was harmless.

We share the State's skepticism that the evidence supported giving justification instructions at all. As previously noted, the altercation with Kiki and his wife on one side and Foreman and his associates on the other had ended by the time Kiki's wife had been dragged out the back door and Kiki followed to assist her. In spite of his involvement in the fracas coming to an end, Foreman drew a handgun and marched out the front door of the bar with several of his associates, walked past his vehicle (i.e., a means of escape from the situation), walked all the way around the bar, and re-engaged in the altercation with Kiki.

Although the aforementioned details make us skeptical of Foreman's claim of a justification defense, we need not decide that issue because, even if we assume he was entitled to it, the failure to instruct on justification did not prejudice Foreman's right to a fair trial. *See Hoyman*, 863 N.W.2d at 7 (holding no reversal is required when there is no prejudice from erroneous instructions). As previously noted, the jury was instructed as to Foreman's justification defense with regard to

count I. On count I, the jury found Foreman guilty of assault causing serious injury, which means the jury found the State established beyond a reasonable doubt that Foreman acted without justification when he assaulted the woman who was shot. The actions that resulted in the guilty finding for count I (i.e., shooting the woman) were the same actions supporting the intimidation with a dangerous weapon charge (i.e., intentionally firing a gun into a group of people, which included the woman who was shot). Given that the jury found Foreman was not justified in shooting the woman in the shin, there is no plausible way to conclude the jury would have determined he was justified in shooting into the crowd in general. The State has established that any error in failing to submit justification instructions regarding the remaining intimidation charge was harmless.

### 2. Mutual Combat Instruction

Next, Foreman argues the district court erred by including an instruction on "mutual combat," claiming the instruction was not supported by the evidence. The instruction stated:

INSTRUCTION NO. 58

If you find that Mr. Foreman, or any person or persons that Mr. Foreman was acting together with, were voluntarily engaged in mutual combat by shooting guns at each other and that, by exchanging gunfire, they jointly created a zone of danger likely to result in the death or injury of innocent bystanders, then you may also find that each of the combatants, including Mr. Foreman, aided and abetted each of the other combatants and it makes no difference which of the combatants fired the first shot or which of the combatants fired the shot which struck and injured [the injured woman] and [Josh].

If you do not find that Mr. Foreman, or any person or persons that Mr. Foreman was acting together with, were voluntarily engaged in mutual combat by shooting guns at each other and that, by exchanging gunfire, they jointly created a zone of danger likely to result in the death or injury of innocent bystanders, then you do not

have to find that each of the combatants, including Mr. Foreman, aided and abetted each of the other combatants and it makes no difference which of the combatants fired the first shot or which of the combatants fired the shot which struck and injured [the injured woman] and [Josh].

Foreman argues the instruction was improper because "[n]either Mr. Foreman nor [Kiki] expected or agreed to engage in a fight" and, rather than agreement to fight, the facts show both Foreman and Kiki were "swept up in the circumstances that rapidly unfolded around them."

Mutual combat requires "a mutual intention, consent, or agreement preceding the initiation of hostilities." *State v. Spates*, 779 N.W.2d 770, 776 (Iowa 2010). "[A]n express or tacit agreement to engage in violence, while sufficient, is not required; it is enough that 'there was a concurrent or mutual expectation that a street battle would ensue.'" *Id.* (quoting *Roy v. United States*, 871 A.2d 498, 508 (D.C. 2005) *abrogated by Fleming v. United States*, 224 A.3d 213, 217 (D.C. 2020)). Essentially, the mutual combat doctrine expands the number of individuals for which an accused can be determined to have aided and abetted by imposing criminal liability on all combatants.

There are factual and policy arguments on both sides of the question whether this was a mutual combat situation. However, we need not decide whether it was appropriate to give the mutual combat instruction in this case. Even if we were to assume it was error, the error was harmless. This is because the record and the jury's verdicts provide us information negating any plausible likelihood Foreman was found guilty based on the actions of anyone other than Foreman. We know the following from the uncontroverted portions of the record and the jury's verdicts:

(1) The marshaling instructions for counts I, II, III, and IV each permitted the jury to find Foreman guilty based on his own conduct or the conduct of someone he aided and abetted.

(2) The only potential aider and abettor of Foreman would have been Kiki pursuant to a mutual combat theory, as there is no evidence supporting a finding that anyone else fired a gun.

(3) The evidence only supports a finding that two people fired guns. Kiki identified Foreman as the shooter of one gun and Kiki acknowledges firing the other.

(4) Kiki fired a .380-caliber handgun.

(5) Josh was struck by a .380-caliber bullet.

(6) The woman who was shot was struck by a 9-millimeter bullet. Nine-millimeter bullets were found in the woman's foot and in the patio area of the bar along with multiple 9-millimeter empty shell casings.

(7) A 9-millimeter handgun was found between the driver's seat and center console of the vehicle Foreman was driving. The handgun's slide was locked open with no ammunition remaining in the magazine, which is consistent with the gun having been fired until it ran out of ammunition.

(8) The 9-millimeter handgun found in Foreman's vehicle was the handgun that fired the 9-millimeter ammunition on the patio.

(9) The jury found Foreman not guilty of shooting Josh (the charge in count II).

Since Josh was struck with a projectile fired from Kiki's gun and the jury found Foreman not guilty of that shooting, we know the jury determined that the

mutual combat doctrine upon which the jury had been instructed did not apply, or for some other reason determined Foreman was not criminally responsible under an aiding and abetting theory. By contrast, the jury's verdict of guilty for shooting the woman, who was struck by the projectiles fired from the gun found right beside Foreman in his vehicle, could only have been based on a conclusion that Foreman fired the shots that struck her, as there is no evidence she was struck by the bullets fired from Kiki's gun. Because there is no plausible way Foreman was found guilty for anyone's conduct than his own, any claimed error in submitting a mutual combat instruction was harmless. *See State v. Jackson*, 587 N.W.2d 764, 766 (Iowa 1998) ("[T]he giving of a joint criminal conduct instruction in instances in which the alleged multiple participants are either principals or aiders and abettors in the same crime does not require reversal if there is no opportunity for the defendant to have been found guilty based on anything other than his own conduct as a principal or an aider and abettor of the crime with which he is charged.").

### 3. Aiding and Abetting Instruction

Finally, Foreman argues the district court erred in submitting an aiding-and-abetting instruction over his objection. The instruction at issue stated:

INSTRUCTION NO. 18

All persons involved in the commission of a crime, whether they directly commit the crime or knowingly "aid and abet" its commission, shall be treated in the same way.

"Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting". Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting".

The guilt of a person who knowingly aids and abets the commission of a crime must be determined only on the facts which show the part he has in it, and does not depend upon the degree of another person's guilt.

If you find the State has proved Mr. Foreman directly committed the crime, or knowingly "aided and abetted" other person(s) in the commission of the crime, then Mr. Foreman is guilty of the crime charged.

The crimes charged of Willful Injury Causing Serious Injury (two counts). Intimidation with a Dangerous Weapon (two counts), Possession of a Controlled Substance with Intent to Deliver requires a specific intent. Therefore, before you can find the defendant "aided and abetted" the commission of the crime, the State must prove Mr. Foreman either has [sic] such specific intent or "aided and abetted" with the knowledge the others who directly committed the crime had such specific intent. If the Mr. Foreman did not have the specific intent, or knowledge the others had such specific intent, he is not guilty.

In addition to the above instruction, the concept of aiding and abetting was incorporated into the marshaling instructions for counts I through IV, as previously noted.

Foreman claims it was error to submit aiding and abetting instructions. For the same reasons explained above why aiding and abetting was harmless error in the context of a mutual combat theory, the aiding and abetting instruction based on any other theory is also harmless. *See id.* There was no opportunity for

Foreman to have been found guilty based on anything other than his own conduct, as he was positively identified as the shooter and the handgun determined to have been used in the shooting was found next to his seat in the vehicle he was driving to flee the scene at high speed.

## VI.    Conclusion

For the reasons stated, we reverse and remand to the district court for a judgment of acquittal on count IV.  We affirm the district court on all other counts.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**